[Civ. No. 1311. Fourth Appellate District.—June 14, 1934.]

MYRON R. McKAY, a Minor, etc., Respondent, v. ORVILLE HEDGER et al., Appellants.

W. M. Conley, Philip Conley, Matthew Conley and Conley, Conley & Conley for Appellants.

Douglas A. May and Ernest Klette for Respondent.

MARKS, J.—Myron R. McKay, on July 27, 1932, was a minor of the age of five years and seven months. He was seriously injured by being knocked down by a model "A" Ford automobile, owned by Robert DeJarnatt and driven by J. B. DeJarnatt, his brother. Suit was brought by the minor against all the defendants. The jury returned a verdict in favor of J. B. and Robert DeJarnatt, and against appellants in the sum of $2,000. This appeal is taken from the judgment entered upon the verdict.

Lewis Avenue is a public street of the city of Fresno which runs in an easterly and westerly direction. Its roadway is paved and is thirty-six feet in width between curbs. It is in the residence section of the city with seventeen private dwellings facing on it in the block where the accident occurred.

At a little after 11 o'clock on the morning of July 27th, there were a number of children playing in and along this portion of the street. A bakery delivery truck driven by Charles E. Turnbow was parked along the northerly curb, facing in a westerly direction on Lewis Avenue. Its right front wheel was about three inches and its right rear wheel about six inches from the curb. This truck was five feet five inches wide. While the driver was making his delivery, an ice delivery truck belonging to the Central California Ice

Company and driven by Orville Hedger, its employee, was stopped on Lewis Avenue with its right wheels about one foot south of the bakery truck. It was also facing in a westerly direction on Lewis Avenue and was five feet five inches in width and had a high panel body. Hedger made a delivery of ice at the same house where the bakery delivery was being made. During the absence of Hedger, Turnbow returned to the bakery truck, drove it west and across Lewis Avenue, where he stopped it along the curb on his left-hand side of the street. While Hedger was making his delivery of ice, several children, including Myron R. McKay, gathered around the rear of the truck, which had been left open, to get pieces of ice. At about this same time J. B. DeJarnatt was driving east on Lewis Avenue with the left wheels of his car about two feet south of the center line of the street. When he was nearly opposite the ice truck Myron ran from behind it and into the path of the oncoming automobile. DeJarnatt applied his brakes so that his wheels skidded for a number of feet. He could not stop in time and the right half of his front bumper struck Myron, throwing him onto the pavement. His skull was fractured and he was otherwise seriously injured.

Appellants present the following five grounds for a reversal of the judgment:

"Does a complaint which alleges specific acts of negligence, state a cause of action if it fails to show that such alleged negligence is a proximate cause of the accident?

"When a minor is injured as the proximate result of his own act in heedlessly running across a busy street, and the acts of an automobile driver who runs into him, can the original negligence of the driver of an ice truck in double parking his vehicle near the scene of the accident (but which double parking entirely ceased prior to the accident) constitute the proximate cause of the youth's accident?

"Is it misconduct for plaintiff's attorney to inject the insurance question into a jury case?

"Did the court err in permitting plaintiff's doctors to testify as to the *possible* (as distinguished from the *reasonably probable*) effect of his injuries?

"Did the court commit error in permitting evidence of a report and of a conversation which were not part of the

*res gestae* and which did not constitute impeachment, in restricting the cross-examination of a hostile witness and in limiting the effect of certain other evidence?"

When the complaint was filed it stated four causes of action. The first and second sought recovery of damages by Myron for his injuries, and the third and fourth sought recovery by the father for money which he had expended in the care of his injured son. On motion of the father his causes of action were dismissed during the trial.

■ Appellants attack the sufficiency of the allegations of the first and second causes of action upon the ground that they fail to state that their alleged negligence was the *proximate cause* of Myron's injuries. The allegations of the first cause of action under attack, which are substantially repeated in the second, are as follows:

"That at or about the hour of 11:30 a. m. of July 27, 1932, the defendant, Orville Hedger, while so employed by the defendant, Central California Ice Company, and in the general course of his employment as the agent of defendant corporation, carelessly and negligently parked a Ford Ice Truck, the property of defendant corporation, and left unattended said ice truck on Lewis street, between Clark and Thesta Streets, on the roadway side of an automobile parked at the north curb of said street; that said defendant, Orville Hedger, parked said truck in a manner that said truck obscured, blocked and cut off the view of all traffic going easterly along the southerly side of Lewis Street; that said truck was parked as alleged, at a time prior to, at, and after the time said plaintiff, Myron R. McKay was struck by the defendant, J. B. DeJarnatt; that said negligent and careless parking of the truck existed and was concurrent in point of time with the negligent and careless driving and operating of the automobile by the defendant, J. B. DeJarnatt; that the said careless and negligent parking of said truck by the defendant, Orville Hedger, was a concurrent and contributing cause to the injuries received by the plaintiff, Myron R. McKay.

"That the said careless and negligent acts of said defendants, to-wit, the careless and negligent driving and operating of the automobile by the defendant, J. B. DeJarnatt, and the careless and negligent parking of the automobile truck

by the defendant, Orville Hedger, directly caused and resulted in the injuries received by plaintiff, Myron R. McKay.

"That as the result of the carelessness and negligence of said defendants, to-wit, the careless and negligent driving and operating of an automobile by the defendant, J. B. De-Jarnatt, and the careless and negligent parking of the automobile truck by the defendant, Orville Hedger, plaintiff has been greatly damaged . . . "

Of course, it is nowhere directly alleged in the complaint that the negligence of appellants was the *proximate* cause of Myron's injuries. However, we cannot see how appellants could have been misled by the pleading. It seems to allege two acts of negligence, the first, statutory negligence in "double parking" the ice truck in violation of the provisions of paragraph nine of section 138 of the California Vehicle Act; the second, negligence in so parking the ice truck in the street that it obstructed the view of the drivers of vehicles lawfully traveling easterly on Lewis Avenue, as was DeJarnatt. It would have been better to have alleged that the negligence of appellants was a *proximate* cause of the injury to Myron. It was alleged that it was a *direct* cause of his injury. "A proximate cause may be either a direct or an indirect cause." (*Goehring* v. *Rogers,* 67 Cal. App. 253, 259 [227 Pac. 687].) In concluding that the informality of the complaint did not mislead appellants and therefore is not prejudicially erroneous we can adopt the following language from *Tietke* v. *Forrest,* 64 Cal. App. 364 [221 Pac. 681] : "The matter of pleading becomes unimportant when a case is fairly tried, as this one apparently was, upon the merits and under circumstances which indicate that nothing in the pleadings misled appellant to his injury. (*Stein* v. *United Railroads of San Francisco,* 159 Cal. 368 [113 Pac. 663].) "

Appellants' second specification of error is divided into two subdivisions: First, contributory negligence on the part of Myron, and second, the question of the negligence in double parking.

On the question of contributory negligence it must be borne in mind that Myron was an infant of tender years. Respondent suggests that under the record before us we could conclude, as a matter of law, that the child was not guilty of contributory negligence because of his age. With-

out deciding this question, we can dispose of this contention of appellants with the following quotation from *Woodman* v. *Hemet Union High School District*, 136 Cal. App. 544 [29 Pac. (2d) 257]: ''The answer to this contention is found in the tender years of the boy. In *Barrett* v. *Harman*, 115 Cal. App. 283 [1 Pac. (2d) 458], a boy of the age of eleven years was injured. The court there said: 'The defense of contributory negligence may be invoked in an action by or on behalf of a child where the latter was of an age sufficient to exercise discretion for the avoidance of injury; but a child is not held to the same degree of care as an adult, and is only required to exercise that degree of care which is ordinarily exercised by minors of like age, mental capacity and discretion. There is no precise age at which as a matter of law a child is to be held accountable for his actions to the same extent as one of full age, and the question as to the capacity of a child at a particular time to exercise care to avoid a particular danger is one of fact for the jury. (*Cahill* v. *E. B. & A. L. Stone Co.*, 167 Cal. 126 [138 Pac. 712].) And the rule has been applied where the child sought to be charged with contributory negligence was considerably older than the plaintiff in the present case. (Citing cases.) The presumption is that the child was at all times exercising due care for its own safety (Code Civ. Proc., sec. 1963, subd. 4). Until overcome, the presumption was evidence in accordance with which the jury was bound to decide (*Hatzakorzian* v. *Rucker-Fuller Desk Co.*, 197 Cal. 82 [41 A. L. R. 1027, 239 Pac. 709]; *Smellie* v. *Southern Pac. Co.*, 212 Cal. 540 [299 Pac. 529]).' The jury by its verdict having absolved Donald Woodman from the charge of contributory negligence, the record furnishes no evidence upon which we can disturb this finding.''

While appellants admit that the ice truck was originally parked on the roadway side of the bakery truck in violation of the provisions of paragraph nine of section 138 of the California Vehicle Act, they urge that this paragraph was enacted for the benefit of the motor vehicle drivers lawfully parked next to the curb, and not for the benefit of other persons using the street, to which class Myron belonged. They also urge that as the ''double parking'' had been ended prior to the time of the accident and

at that time the parking of the truck in the street was not in violation of any law or any ordinance of the city of Fresno, "double parking" could not be considered the proximate cause of the accident.

We cannot conclude that paragraph nine of section 138 of the California Vehicle Act was passed solely for the benefit of the drivers of motor vehicles parked next to the curbing so such drivers could conveniently leave their parking places and proceed upon their business. In the instant case Turnbow found no difficulty in driving his bread truck from its position along the curb while the ice truck was parked on the roadway side of his vehicle. The vehicular and pedestrian traffic lawfully upon a street is entitled to the unobstructed use of as much of the roadway as may be conveniently afforded. To show the fallacy of appellants' argument it should be sufficient to call attention to the too frequent spectacle of a long line of impatient motorists stopped in a public street by a motor vehicle parked at a distance from the curb which entirely obstructs the progress of those behind it who cannot proceed because of the thoughtless or wilful act of the driver of the parked vehicle who for the time has entirely usurped the use of his right-hand half of the street. These drivers certainly should benefit from the terms of the act. The enactment in question was undoubtedly passed for the benefit of all persons lawfully using public streets.

Appellants contend that, while the double parking of the ice truck was unlawful, still, as the bread truck left the curbing and proceeded down the street before the accident, the violation of law and the resulting negligence *per se* was then ended and, therefore, the double parking could not be considered a proximate cause of the injury. This is not controlling here, even though the argument be assumed to be sound. There yet remain the questions,—Was the leaving of the ice truck with its large body cutting off the view of a considerable portion of the street, the exercise of ordinary care by Hedger under the circumstances here presented? Would a number of small children playing along and in the street near the place where the ice truck was parked, come within his orbit of duty to the extent that he owed them the duty not to expose them to the risk of injury? Should such an accident as we have here, been

foreseeable by him under the obvious circumstances existing at the time he double parked the truck with its right side about seven feet from the curb and its left side not more than six feet from the center of the street?

Omitting from consideration negligence arising from the violation of some law or ordinance, negligence is either positive or passive in its nature. It is the doing of some act which a reasonably prudent person would not do, or the failure to do some act, or to take some precaution which a reasonably prudent person would do under the circumstances. It must result in some injury to person or property which must be so situated or related to the negligent actor in point of time and place that he must owe the duty of not committing the injury, and under such circumstances that the one guilty of negligence, if he had used ordinary prudence and foresight, should have foreseen that the injury was a result to be anticipated. Measured by these rules we have concluded that the question of whether or not the parking of the ice truck in Lewis Avenue at a considerable distance from the curb was negligence under the facts here disclosed was a question of fact to be determined by the jury. The place of the accident was in a residential district with residences in close proximity. A number of small children were playing in and along the street. After Hedger had stopped his truck he took a hundred pounds of ice from its rear and made a delivery to the back door of one of the dwellings, leaving the rear doors of his truck open and the ice exposed to view. Any adult should know that children like ice on a summer day. Had Hedger thought at all he must have realized that the children would gather around the open doors at the rear of his truck and help themselves to small pieces of ice. It would follow as a natural result that having secured the ice they would continue their play in and along the street. He should have foreseen that some of them might run from behind the ice truck where they were hidden from the view of any motorist approaching from the east, and in their play they might run southerly across the street. Vehicular traffic is to be expected on a city street. In other words, we conclude that any reasonably prudent person should have anticipated the exact accident which happened had he thought of the results likely to occur. We have been cited to no law or ordinance

which prohibited a child from crossing from one side of Lewis Avenue to the other between intersections. Contributory negligence was a slender staff for Hedger to lean upon and has proven unavailable to him. Any adult should realize the nature of children at play and should so regulate his conduct that his carelessness does not result in unnecessary injury to them.

 Appellants urge that, assuming the negligence of Hedger, it was not the proximate cause of Myron's injury. Proximate cause may be a direct or an indirect cause. (*Goehring* v. *Rogers, supra.*) In *Hill* v. *Peres*, 136 Cal. App. 132 [28 Pac. (2d) 946], it is said: "The law does not require that the negligence of a defendant must be the sole cause of the injury in order to entitle the plaintiff to recover therefor. All that is required is that the negligence in question shall be a proximate cause of the injury. (*Griffith* v. *Oak Ridge Oil Co.*, 190 Cal. 389 [212 Pac. 913]; *Dewees* v. *Kuntz*, 130 Cal. App. 620 [20 Pac. (2d) 733].) The primary causation may be so continuous that a concurrent wrongful act precipitating the disaster will in law be regarded not as independent, but as conjoining with the original act to create the disastrous result. (*Merrill* v. *Los Angeles Gas & Elec. Co.*, 158 Cal. 499 [111 Pac. 534, 139 Am. St. Rep. 134, 31 L. R. A. (N. S.) 559]; *Rauch* v. *Southern Cal. Gas Co.*, 96 Cal. App. 250 [273 Pac. 1111]; *Carroll* v. *Central Counties Gas Co.*, 74 Cal. App. 303 [240 Pac. 53]; *Marton* v. *Jones*, 44 Cal. App. 299 [186 Pac. 410]; *Sawyer* v. *Hooper*, 79 Cal. App. 395 [249 Pac. 530].) The rule is stated in *Hale* v. *Pacific Telephone & Telegraph Co.*, 42 Cal. App. 55 [183 Pac. 280], and approved in *Sawyer* v. *Southern Cal. Gas Co.*, 206 Cal. 366 [274 Pac. 544], that 'where the original negligence of a defendant is followed by an independent act of a third person which results in a direct injury to a plaintiff, the negligence of such defendant may, nevertheless, constitute the proximate cause thereof if, in the ordinary and natural course of events, a defendant should have known the intervening act was likely to happen; but if the intervening act constituting the immediate cause of the injury was one which it was not incumbent upon the defendant to have anticipated as reasonably likely to happen, then, since the chain of causation is broken, he owes no duty to the plaintiff to anticipate

such further acts, and the original negligence cannot be said to be the proximate cause of the final injury.' Whether the negligence of the two appellants here was independent or concurrent was largely a question for the jury whose finding is conclusive on appeal if there be evidence to support it. (*Jordan* v. *Great Western Motorways,* 213 Cal. 606 [2 Pac. (2d) 786].)'' The jury found that J. B. De-Jarnatt was free from negligence and that the negligence of Hedger was the proximate cause of the accident. Under the facts before us we cannot disturb this finding, as it is supported by material and competent evidence.

Appellants strongly rely upon the case of *Powers* v. *Standard Oil Co.,* 98 N. J. L. 730 [119 Atl. 273], as supporting their theory that the evidence shows no negligence upon their part. An examination of that case discloses that a large Standard Oil Company truck was parked at the curb on the wrong side of Twelfth Street in the city of Trenton in violation of the provisions of the New Jersey Traffic Act (P. L. 1915, chap. 156) ; that a nine year old child in attempting to cross the street ran from behind the truck and into an automobile lawfully traveling along the street. A judgment was entered in favor of the automobile driver and in favor of plaintiff and against the Standard Oil Company and the driver of its truck. This judgment was reversed by the Supreme Court of New Jersey upon the grounds that the evidence showed contributory negligence as a matter of law on the part of the child and no negligence on the part of the driver of the truck that proximately caused the accident. We have already considered the question of the contributory negligence of a minor child. The law in California on this question is not in harmony with the New Jersey rule as announced in the Powers case. The only other question presented by the Powers case is that of the negligence of the driver of the truck. The only negligence charged against him was that of parking on the wrong side of the street. It is obvious that regardless of the direction in which the truck was headed it would present the same obstruction to a view of a portion of the street. That this was the reason why the Supreme Court of New Jersey held that the incorrect parking was not the proximate cause of the injury is shown by the following quotation from that opinion: ''It appears from the testimony

from McQuire that, even if the position of the truck had been reversed, so as to entitle it legally to park on the side of the street where it was stationed, the same difficulty of an obstructed vision would have been presented. . . . In the case at bar it was unimportant whether the defendant's car rested legally or illegally upon the street, since its obstruction to the vision of the crossing pedestrian, or to the driver of the moving car upon the roadway, would, under the testimony, be equally effective.'' This holding is paralled to and based upon the same reasoning as the rule prevailing in California in a case where an unlicensed motor vehicle driver is involved in an accident and it is held that the fact of the driver being unlicensed cannot of itself, and alone, support a civil judgment against him. The Powers case is not in conflict with the conclusion we have reached concerning the negligence of Hedger.

Appellants maintain that respondent injected into the case the fact that the California Ice Company carried insurance on its trucks. They cite the cross-examination of Dr. F. L. R. Burks. There is no reference made to any insurance in any of the questions asked or answers given by this witness. They also cite the following which occurred in the cross-examination of Hedger: ''Q. You state you made a report on the evening of the accident. Who did you make that report to? Mr. Conley: Objected to as immaterial. The Court: The objection is overruled. A. To Mr. Algy. Mr. Klette: Q. And he is someone in connection with the Central California Ice Company, is he? Mr. Conley: Objected to as irrelevant, incompetent and immaterial, improper cross-examination. The Court: The objection is overruled. A. I think he is an insurance adjuster. Mr. Conley: Now we move to strike that out, and assign the asking of the question as prejudicial misconduct, and object to the questions, all this series of questions, and charge counsel's asking it as improper, with improper motive, for a purpose that is improper in this case. The Court: This answer may go out, and the jury is instructed to disregard it.'' The instruction of the trial court to the jury cured the error, if any.

Appellants urge that the trial court committed prejudicial error in admitting testimony as to the possible results of the injuries to Myron as distinguished from the reasonably

probable results. The following is cited by them: "Mr. Klette: Q. Doctor, from your observation in this case, and your experiences as a physician and surgeon can you state to this jury what the probable result of these injuries will be? . . . A. Well I couldn't say definitely that this boy will or will not develop epileptic attacks. He might develop it and he might not. Mr. Conley: We move that that be stricken out on the ground that it is not within any issue and does not tend to prove anything probable in this case, therefore conclusion and opinion and no proper foundation laid. The Court: The motion is denied."

In 22 Corpus Juris, at page 675, it is said: "While absolute certainty of statement is not required, a mere conjecture or speculation of the witness is excluded, nor should he be allowed to state future apprehended conditions."

The evidence discloses that Myron was seriously injured. He suffered a severe fracture of his skull, was confined to a hospital for a substantial period of time and his hearing was impaired. The jury returned a verdict in his favor in the sum of $2,000. In view of the size of the verdict, when measured by the seriousness of the injuries, it is evident the jury paid little attention to the medical testimony to which appellants object and that it did not prejudice them.

Appellants make numerous other specifications of error on rulings of the trial court on objections to questions propounded to several witnesses. We have examined all of them and can find no prejudicial error in any of them.

Judgment affirmed.

Barnard, P. J., concurred.

Jennings, J., being absent, did not participate herein.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 13, 1934.