[L. A. No. 16716. In Bank.—January 11, 1939.]

BUD RAE, Appellant, v. CALIFORNIA EQUIPMENT COMPANY (a Corporation), Respondent.

Murchison & Clopton and Mort L. Clopton for Appellant.

Pacht, Pelton, Warne & Black, Isaac Pacht, Alfred P. Chamie and Saul Ruskin for Respondent.

WASTE, C. J.—Plaintiff appeals from a judgment entered in favor of the defendant following the granting of the latter's motion for nonsuit. The action is one for damages for personal injuries.

It appears that shortly prior to the accident which gave rise to the plaintiff's injuries, the defendant, in the usual course of business, rented an electric hoist machine to the Fox Film Corporation by whom the plaintiff was employed as an actor. Defendant's salesmanager was informed that the hoist machine would be required to carry a load of approximately 2,500 or 3,000 pounds. The Fox Film Corporation by means of cables connected the hoist machine to a cage or car which was lowered and raised in a shaft leading down to a tunnel being constructed and used in the filming of a motion picture. At the suggestion of the film company, defendant's salesmanager submitted the names of persons who might be engaged to operate the machine. One of the persons so suggested, was employed to operate the hoist machine and was so engaged at the time of the accident. It was stipulated, however, that though recommended by the defendant, through its salesmanager, the operator was, in fact, the employee of the film company. Consequently, any negligence in the *operation* of the hoist machine would be chargeable solely to the employer, the Fox Film Corporation. Plaintiff did not, however, proceed against the defendant because of any negligence of the operator, as shall hereinafter appear.

Just prior to the accident, the plaintiff, with ten other actors, boarded the hoist car for the filming of a scene showing them being lowered in the shaft to the tunnel about the construction of which the picture evolved. The operator of the hoist machine could not see the hoist car or cage from his station and he was unaware that it was loaded with men.

Upon receiving the signal to lower the car, he disengaged the clutch and released the footbrake with which the hoist machine was equipped. The car thereupon fell 33 feet to the bottom of the shaft with resulting injuries to the plaintiff. As the car was falling, the operator apparently sensed that something was wrong whereupon he applied the foot-brake. The brake failed to bring the car under control. His testimony indicates that "he was not able to apply sufficient brake stoppage" before the rapidly moving car hit the bottom of the shaft, with resulting injuries to the plaintiff.

In his complaint, containing several counts, the plaintiff alleged, among other things, that the defendant, as owner and lessor of the hoist had, in several specified particulars, violated a municipal ordinance and certain incorporated safety orders, all of which, he averred, had proximately contributed to the accident and his injuries. It was, and is, his theory that even though the operator of the hoist may have been negligent, such negligence did not break the line of causation and that the alleged negligence of the defendant was a concurrent proximate cause of the accident. In support of this theory he introduced in evidence a certified copy of the ordinance which it is claimed the defendant had violated. (Ordinance No. 33,512, N. S., as amended.) So far as material here, the ordinance provided that: "The Board of Mechanical Engineers shall have authority and jurisdiction over all . . . hoists, . . . and shall inspect and license the use and operation of any of the said apparatus, machinery or equipment as hereafter provided. . . .

"Sec. 26. Payment of Inspection Fees. It shall be unlawful for any person, firm or corporation to use or operate, or cause or permit to be used or operated, any of the equipment or apparatus mentioned in this ordinance until after the same shall have been inspected, all Permit and Inspection fees Paid, and a Certificate issued as herein provided, which Certificate of Inspection shall be good for a period of one year unless sooner revoked for cause. . . .

"Operating Without Certificate. It shall be unlawful for any person, firm or corporation to use, or to cause or permit to be used, any elevator or any equipment mentioned in this ordinance for the transportation of passengers or freight until the certificate of inspection of such equipment shall have been issued by the Board of Mechanical Engineers and said

certificate posted in such elevator, or in a conspicuous place near the equipment inspected.''

Plaintiff also put into evidence a certified copy of certain ''General Construction Safety Orders'' as the same had been published by the Industrial Accident Commission and which were expressly made a part of the cited ordinance. The portions of said safety orders relied on by plaintiff read as follows:

''Order 1114. Construction Material Elevators . . .

'' (w) Every hoisting engine shall be equipped with proper brakes to sustain its maximum load in any position . . .

''Order 1115. Construction Material and Man Elevators . . .

'' (c) The cable drum of the hoisting machine shall be rigidly and permanently attached to the driving mechanism. Friction gearing or clutch mechanism shall not be used.

'' (d) All hoisting machines shall be provided with an automatic brake of sufficient holding power to prevent rotation of drum in either direction when the power is cut off from the machine.

'' (e) All hoisting machines shall be provided with an efficient device which will automatically bring the cage to a stop at the top and bottom limits of travel.''

Plaintiff adduced other evidence which disclosed that, contrary to the provisions of the ordinance, the hoist machine furnished by the defendant had not been inspected, that the cable drum of the machine was not rigidly and permanently attached to the driving mechanism but was connected by a clutch mechanism, that the machine was not equipped with an automatic brake to prevent rotation of the drum when the power was cut off and that it was not equipped with a safety device to bring the cage to a stop at the top and bottom limits of travel.

At this point we pause to state that we find no merit in the defendant's contention that the above quoted safety orders are without application here because of the terms of order No. 1100 to the effect that ''These orders [as above quoted] shall apply to the construction, alteration, repairing, renovating, removal or wrecking of buildings or other structures within this state.'' We are of the opinion that the shaft and tunnel used and being constructed in the filming of the picture then in production constituted the ''construction'' of one of the ''other structures'' contemplated in

said safety orders. Its temporary character does not militate against such a conclusion. Certainly, it could not successfully be urged that the "construction, alteration, repairing, renovating, removal or wrecking" of a *building* essential to a movie set would not come within the purview of the safety orders, thus exempting the machinery employed in such work from the regulatory features thereof. The ordinance and safety orders fail to include any requirement that the "building" or "other structures" therein contemplated should be invested with any particular degree of permanency. The obvious purpose of the ordinance and the safety orders is to protect from injury and possible death all persons properly on, near or using the regulated machinery when employed in the construction, etc., of "buildings or other structures". As stated, in our opinion, the construction of the tunnel being filmed came within the phrase "other structures" so as to require the hoist machinery used in connection therewith to comply with the established regulations.

Nor do we think that the ordinance and safety orders are here inapplicable because the defendant had leased the hoist machine to a third person. To indulge such a construction would be to disregard as surplusage many of their terms and would render meaningless the word "owner" and such phrases as "or permit to be used or operated", repeatedly appearing therein. It is our function to construe the ordinance and incorporated safety orders as they were enacted, without adding thereto or detracting therefrom. If defendant's construction were intended, the legislative body could well have omitted the language which we are here requested to read out of the ordinance.

The case of *Gulzoni* v. *Tyler*, 64 Cal. 334 [30 Pac. 981], offers no obstacle to our conclusion herein for in that case it was merely held that the transfer of the entire possession and control of property to another does not impose any responsibility on the transferor for the "*wrongful use or mismanagement*" of it by the transferee. This is so under the rule of *respondeat superior*. Here, however, as already stated, the plaintiff has not proceeded against the defendant lessor because of any wrongful use or mismanagement of the hoist by the lessee but because of the defendant lessor's alleged negligence in furnishing an uninspected hoist unequipped with the prescribed safety devices.

■ We are satisfied that the plaintiff produced sufficient evidence to warrant the case going to the jury and that it was error for the trial court to grant the defendant's motion for nonsuit. It is well established that upon such a motion every favorable inference and presumption fairly arising from the evidence adduced must be considered as facts proved in favor of the plaintiff. Entirely apart and aside from any negligence of the operator in the operation of the hoist machine, and for which, as stated, the defendant would not be answerable, we are of the view that there is evidence in the record upon which the jury might have found that the car would not have dropped to the bottom of the shaft if the defendant, as owner and lessor, had first caused the hoist machine to be inspected and equipped with the safety devices and automatic brake specified in the ordinance and safety orders. Section 408 of the Restatement of the Law of Torts states that "One who leases a chattel as safe for immediate use is subject to liability to those whom he should expect to use the chattel, or to be in the vicinity of its probable use, for bodily harm caused by its use in a manner for which, and by a person for whose use, it is leased, if the lessor fails to exercise reasonable care to make it safe for such use or to disclose its actual condition to those who may be expected to use it." In comment "a" thereunder it is stated that "The fact that a chattel is leased for immediate use makes it unreasonable for the lessor to expect that the lessee will do more than give it the most cursory of inspections. The lessor must, therefore, realize that the safe use of the chattel can be secured only by precautions taken by him before turning it over to the lessee . . . " In comment "b" it is stated, in part, that "The rule stated in this Section is peculiarly applicable to persons who make a business of leasing chattels. In such a case, in the absence of an understanding to the contrary it may be assumed that both lessor and lessee understand that the article is leased as fit for immediate use." (See, also, *McCall* v. *Pacific Mail SS. Co.*, 123 Cal. 42, 44 [55 Pac. 706].)

■ To state the matter another way, we are inclined to the view that a finding by the jury that the car would not have fallen if the defendant lessor had complied with the ordinance, might well render the defendant liable to third persons not in privity with it, but properly using the hoist, under the dangerous instrumentality doctrine announced in *Dahms* v. *General Elevator Co.*, 214 Cal. 733 [7 Pac. (2d)

1013], and *Kalash* v. *Los Angeles Ladder Co.*, 1 Cal. (2d) 229 [34 Pac. (2d) 481]. ▉ Of course, any liability of the defendant is dependent on a finding that its negligence was one of the proximate causes of the accident. Violation of the ordinance would constitute negligence *per se* and the question whether such negligence proximately contributed to the plaintiff's injuries would be one of fact for the jury. (*Gerberich* v. *Southern Cal. Edison Co.*, 5 Cal. (2d) 46, 51 [53 Pac. (2d) 948]; *McKay* v. *Hedger*, 139 Cal. App. 266, 275, 276 [34 Pac. (2d) 221].) ▉ Had the case gone to the jury, as it should, the jury might have found that defendant's negligence was continuing in character and concurred with any negligence of the operator in producing the accident and that the negligence of the operator, if any, did not break the line of causation. In this connection, section 439 of the Restatement, *supra*, declares that: "If the effects of the actor's negligent conduct actively and continuously operate to bring about harm to another, the fact that the active and substantially simultaneous operation of the effects of a third person's innocent, tortious or criminal act is also a substantial factor in bringing about the harm does not protect the actor from liability." We had occasion to state this principle in *Lacy* v. *Pacific G. & E. Co.*, 220 Cal. 97, 98 [29 Pac. (2d) 781], wherein it is stated that: "The authorities in this state hold that where the original negligence continues and exists up to the time of the injury, the concurrent negligent act of a third person causing the injury will not be regarded as an independent act of negligence, but the two concurring acts of negligence will be held to be the proximate cause of the injury." In the cited case, this principle was applied to a situation where the plaintiff's injury resulted from the concurring negligence of defendant in leaving a pole in a driveway and the negligence of another in so operating his automobile as to collide with said pole. It was held that "in such a case either of the negligent persons would be liable to the plaintiff for his injuries". (See, also, the early and leading case of *Pastene* v. *Adams*, 49 Cal. 87, and *Springer* v. *Pacific Fruit Exch.*, 92 Cal. App. 732, 737-739 [268 Pac. 951].)

Nor do we think the case of *Stultz* v. *Benson Lumber Co.*, 6 Cal. (2d) 688 [59 Pac. (2d) 100], relied on by the defendant, compels a conclusion other than that here announced. The cited case came up on appeal from a judgment entered

after a demurrer had been sustained to the complaint without leave to amend. Examination of the case discloses that the complaint therein had alleged that the defendant lumber company had sold to the employer of the plaintiff for use as a main support in a scaffolding a plank of lumber which it knew to be defective and inappropriate for the intended use. But, the complaint further alleged that plaintiff's employer also knew of the defect prior to using the plank in the construction of the scaffold which, by reason of such defect, collapsed and precipitated plaintiff to the ground. In exonerating the defendant lumber company from liability on the ground that the intervening negligence of plaintiff's employer in knowingly using the defective plank in the scaffold broke the chain of causation, the opinion declares:

"It is true that the plaintiff alleges that the Benson Lumber Company was informed of the use to be made of the lumber and that it knew of the defects in the plank and its unsafe and dangerous condition for use as a main support in the construction of a scaffolding. But it is *not* alleged, nor is it contended that the condition of the plank was concealed in any manner or unknown to the purchasers, the Newbys. On the contrary, it is *expressly alleged* that the plank was full of knots and was cross-grained, and that this condition and its unsuitability for the purpose of a support for a scaffolding was likewise known to them, and *that they with such knowledge used it as a main support for the scaffolding.* . . .

"The conceded negligence of the Newbys must be deemed to be an intervening cause which served to break the chain of causation between the alleged negligence of the defendant Benson Lumber Company and the injury suffered by the plaintiff. . . . Whether the defendant Newbys' acts in constructing the scaffold with the defective lumber, had they been without knowledge of its defective condition, would still have been an efficient intervening act of negligence we are not called upon to decide. . . .

"When the defendants Newby constructed the scaffolding with the defective plank, *knowing it to be defective,* such negligence in the construction of the scaffolding became their negligence and their responsibility and terminated the responsibility of the Benson Lumber Company as to the plaintiff. . . . "

It is thus apparent that the Stultz case turned on the employer's deliberate use of the plank when he knew of its defective condition, a fact alleged by the plaintiff in his complaint. The opinion expressly leaves open the question whether the line of causation would have been broken by the employer's conduct in using the plank had he been without knowledge of its defective condition. In the present case, the hoist machine was furnished by defendant to the plaintiff's employer as a completed whole which, as stated above, the plaintiff's employer had the right to assume was ready to be used for the purpose for which the defendant had leased it. Plaintiff's evidence does not disclose, as did the complaint in the Stultz case, that his employer had knowledge that the hoist was uninspected and unequipped with the required safety devices. Upon a motion for nonsuit, it must be assumed from the showing made that the jury would find that the employer was without such knowledge. Under such circumstances, there appears to be no reason why the instant case should be governed by a rule other than the usual and ordinary rule that the question of proximate cause is one of fact for the jury.

For the foregoing reasons the judgment is reversed with directions to the court below to proceed in conformity with the views herein expressed.

Curtis, J., Langdon, J., Houser, J., Shenk, J., and Seawell, J., concurred.

Rehearing denied. Langdon, J., and Edmonds, J., voted for a rehearing.