[Civ. No. 14221. First Dist., Div. One. Mar. 13, 1950.]

LOIS MARGARET JONES, a Minor, etc., et al., Appellants, v. CITY OF SOUTH SAN FRANCISCO et al., Respondents.

Elkins & Ross, Harold Elkins, Saul N. Ross, James F. Boccardo and Charles R. Wayland for Appellants.

Millington, Dell'Ergo, Weeks & Morrissey for Respondents.

PETERS, P. J.—Plaintiff Lois Margaret Jones (now Mrs. Gordner), then a minor, and plaintiff George K. Gordner, Jr. (now the husband of Lois) received serious injuries when

hit by an automobile driven by defendant Genevieve Iverson (now Mrs. Finsterbusch) in South San Francisco. In addition to Miss Iverson, the city was joined as a defendant on the theory that it, with knowledge of the condition, so negligently maintained the street and highway at the scene of the accident that the sidewalk and street were flooded, thus requiring plaintiffs, who were walking on the sidewalk area, to leave the sidewalk and walk in the street, where they were hit.

At the close of plaintiffs' case, the city moved for a nonsuit on the grounds first, that, assuming the city was negligent, such negligence, as a matter of law, was not a proximate cause of the accident, and secondly, that the evidence showed contributory negligence on the part of the plaintiffs as a matter of law. Defendant Iverson moved for a nonsuit on the contributory negligence ground. The trial court denied the Iverson motion, but granted the nonsuit in favor of the city, stating that the motion was granted on the ground that the negligence of the city, if any, was not, as a matter of law, a proximate cause of the accident. The jury returned verdicts in favor of plaintiffs against defendant Iverson. The plaintiffs appeal from the judgment of nonsuit in favor of the city.

At the threshold of this appeal we are met by the contention of the city, raised for the first time on appeal, that the nonsuit should be sustained for the reason that, under sections 5640 and 5641 of the Streets and Highways Code, a city is not liable for knowingly maintaining defective streets and sidewalks, even where the defective condition is the proximate cause of an injury to a person not guilty of contributory negligence. The city may properly urge this defense, although it was not mentioned to or considered by the trial court. "The correct rule is that grounds not specified in a motion for nonsuit will be considered by an appellate court only if it is clear that the defect is one which could not have been remedied had it been called to the attention of plaintiff by the motion." (*Lawless* v. *Calaway*, 24 Cal.2d 81, 94 [147 P.2d 604].) The defect here claimed, if it existed, is of the type that could not have been remedied had it been called to the attention of appellants. This being so, respondents may properly raise the contention. Before discussing the facts, therefore, we turn to a discussion of this point of law, because, if sound, it is a complete defense to the city, regardless of the facts.

The contention that a city is not liable to a person injured because of the defective condition of a public street allowed to exist after the city has knowledge of the condition, is a somewhat startling one. There are many cases in the books where liability has been imposed in such circumstances, without any reference, however, to sections 5640 and 5641 of the Streets and Highways Code, but decided after those sections were placed in that code. These cases have held that a municipality is liable for the defective condition of its streets and sidewalks where the city has actual or constructive knowledge of the defective condition. (See, for example, *Warren* v. *City of Los Angeles*, 91 Cal.App.2d 678 [205 P.2d 719] ; *Fackrell* v. *City of San Diego*, 26 Cal.2d 196 [157 P.2d 625, 158 A.L.R. 625] ; *Kirack* v. *City of Eureka*, 69 Cal.App.2d 134 [158 P.2d 270], and cases cited therein.) All of these cases were incorrectly decided if the contention now made by the city is sound.

Liability in such cases is predicated on the Public Liability Act of 1923 (Stats. 1923, p. 675; 2 Deering's Gen. Laws, Act 5619.) Paragraph two of that statute reads as follows: "Counties, municipalities and school districts shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways, buildings, grounds, works and property in all cases where the governing or managing board of such county, municipality, school district, or other board, officer or person having authority to remedy such condition, had knowledge or notice of the defective or dangerous condition of any such street, highway, building, grounds, works or property and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition or failed and neglected for a reasonable time after acquiring such knowledge or receiving such notice to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition."

The sections of the Streets and Highways Code relied upon by the city to free it from liability were added to that code in 1941. (Stats. 1941, ch. 79, p. 877.) Section 5640, entitled "Immunity of city" reads as follows: "If, because any graded street or sidewalk is out of repair and in condition to endanger persons or property passing thereon, any person, while carefully using the street or sidewalk and exercising ordinary care to avoid the danger, suffers damage to his person or prop-

erty, through any such defect therein, no recourse for damages thus suffered shall be had against the city.''

Section 5641 provides who may be held liable, using the following language: ''If the defect in the street or sidewalk has existed for a period of 24 hours or more after written notice thereof to the superintendent of streets, then the person on whom the law may have imposed the obligations to repair such defect in the street or sidewalk, and also the officer through whose official negligence such defect remains unrepaired, shall be jointly and severally liable to the party injured for the damage sustained; provided, that the superintendent of streets has the authority to make the repairs, under the direction of the legislative body, at the expense of the city.''

These 1923 and 1941 statutes appear to be, and probably are, inconsistent. A consideration of their history and background, however, demonstrates to a certainty that where conflicting, the 1923 statute controls.

Sections 5640 and 5641 of the Streets and Highways Code were not enacted for the first time in 1941. In substance, they have been in our law since 1911 when the Improvement Act of 1911 was first passed. (Stats. 1911, ch. 397, p. 730.) Section 39 of that statute (Stats. 1911, at p. 750) provided: ''If, in consequence of any graded street or public highway or sidewalk, being out of repair and in condition to endanger persons or property passing thereon, any person, while carefully using said street or public highway, or sidewalk and exercising ordinary care to avoid the danger, suffer damage to his person or property, through any such defect therein, no recourse for damages thus suffered shall be had against such city; but if such defect in the street or public highway shall have existed for the period of twenty-four hours or more after written notice thereof to the said superintendent of streets, then the person or persons on whom the law may have imposed the obligations to repair such defect in the street or public highway, and also the officer or officers through whose official negligence such defect remains unrepaired, shall be jointly and severally liable to the party injured for the damage sustained; provided, that said superintendent has the authority to make said repairs, under the direction of the city council, at the expense of the city.'' Between 1911 and 1941 this section was never expressly amended. In 1941, the section was simply codified, and without substantial change

placed in the Streets and Highways Code as the two sections above quoted, and section 39 of the 1911 act was repealed.

In 1940, it was expressly held that section 39 did not operate so as to relieve cities from liability created by the 1923 act. In *Ackers* v. *City of Los Angeles,* 40 Cal.App.2d 50, at page 53 [104 P.2d 399], appears the following: "Defendant contends that a city is not liable for the defective condition of its sidewalks, basing its argument upon the fact that by section 39 of the Improvement Act of 1911 municipalities were exempted from liability to persons using a 'street or public highway or sidewalk . . .'. It is pointed out that the Public Liability Act of 1923 [Stats. 1923, p. 675; 2 Deering's Gen. Laws, Act 5619] makes cities liable for the 'defective condition of public streets, highways, buildings, grounds, works and property . . .' without specifically mentioning sidewalks. We need not give serious consideration to defendant's contention nor the plaintiff's argument that the Act of 1923 repealed section 39 of the Act of 1911 and that the term streets includes sidewalks (19 Cal.Jur. 16), for the reason that cities have been held liable for the defective condition of sidewalks in so many cases since the enactment of the Act of 1923 that it must be considered as settled law in California that the Public Liability Act of 1923 includes injuries resulting from the defective condition of sidewalks."

The decision of this case is undoubtedly sound. In 1911, cities in California were not liable for torts committed while acting in a governmental capacity. The first part of section 39 of the Improvement Act of 1911 merely restated that common law principle. The second part of the section imposed a personal liability upon certain city officials if they failed to repair. Section 39 was the law until 1923, when the Public Liability Act was passed. By that statute a city was made liable to persons injured by the defective condition of streets and highways where the city had notice but failed to repair. This section imposed a new liability in tort on governmental agencies. Where inconsistent with section 39 of the Improvement Act of 1911, the 1923 statute controlled. (*Ackers* v. *City of Los Angeles,* 40 Cal.App.2d 50 [104 P.2d 399].) It did not entirely repeal, by implication, section 39, because that section still contained the liability imposed on public officials and still expressed the law applicable to governmental agencies where they had no notice, actual or constructive.

The codification of section 39 in 1941 did not and could not impliedly repeal the provisions of the 1923 act. Such codifica-

tion was not the enactment of a new statute. Section 2 of the Streets and Highways Code expressly provides that the provisions of that code "in so far as they are substantially the same as existing statutory provisions relating to the same subject matter, shall be construed as restatements and continuations thereof and not as new enactments." Moreover, it is the settled policy of the California Code Commission, in recommending codification, not to make substantial changes in the law. (*Sobey* v. *Molony*, 40 Cal.App.2d 381 [104 P.2d 868].) It is also well settled that a codification or restatement of the law by the Legislature operates as a continuation of the old statute, and effects no change in meaning or operation. (*Estate of Martin*, 153 Cal. 225 [94 P. 1053]; *Perkins Mfg. Co.* v. *Clinton Const. Co.*, 211 Cal. 228 [295 P. 1, 75 A.L.R. 439]; *Chambers* v. *Davis*, 131 Cal.App. 500 [22 P.2d 27]; *Gastineau* v. *Meyer*, 131 Cal.App. 611 [22 P.2d 31].)

Thus, the 1941 codification of section 39 added nothing to the legal effect of that section. The law remained as it was immediately prior to such codification, and, as already pointed out, the law then was, and now is, that where inconsistent the Public Liability Act of 1923 controls. It should be noted that these views are in precise accord with an opinion of the attorney general adopting the opinion of Fred B. Wood, secretary of the California Code Commission, on this precise question. (3 Opns. of the Atty. Gen. of Cal., 203.)

█ Under the 1923 statute a governmental agency is liable to a person proximately injured by reason of the defective condition of its streets or sidewalks, if the governmental agency had knowledge, actual or constructive, of such defective condition. The city, while not seriously challenging the contention that plaintiffs' evidence shows a defective condition and shows knowledge of such condition on the part of city officials, does contend that such negligence was not, as a matter of law, a proximate cause of the accident. This, it will be remembered, was the point upon which the trial judge granted the nonsuit. A consideration of this point requires a reference to the facts.

Just prior to midnight on October 20, 1943, the plaintiffs came out of a movie in South San Francisco. Plaintiff George Gordner, Jr., was then in the Navy and "keeping company" with Lois. They had no automobile. Lois lived in Lindenville, a housing project located in South San Francisco. To reach this project it was necessary to walk along Linden

Avenue, a street running generally north and south, within the city. Plaintiffs walked south, and on the west side of the street. There was no place for pedestrians to walk on the east side of the street. The paved street was about 20 feet wide, divided down the middle with a white traffic line. On the west side there was a 10-foot shoulder, and then a raised area about 8 feet wide, that was intended as a sidewalk area for pedestrians. This strip was about 6 inches higher than the adjoining shoulder and was not paved, being simply covered with dirt. During rainstorms it became quite muddy.

The plaintiffs proceeded on this sidewalk area until they reached a place where the sidewalk area was entirely covered with a big pool of water. This pool extended out into the street to within a couple of feet of the white traffic line. The east side of the street was not covered with water. Plaintiffs testified that they lowered the umbrella they were carrying and looked in both directions before stepping off the sidewalk area to walk around the pool of water. Both testified that they did not observe the lights of any approaching vehicles. They proceeded around the pool and when in the street area were hit by an automobile being driven by the defendant Iverson. The jury has found that this defendant was negligent, and she has not appealed.

The failure to see the approaching automobile is explained by the fact that although Linden Avenue runs almost straight for a considerable distance north and south of the scene of the accident, it is by no means level. All witnesses agreed that several hundred feet north of the scene of the accident Linden Avenue crosses Colma Creek by means of a bridge. The bridge is higher than the highway so that there is a pronounced dip in the roadbed each side of the bridge. There are other low places in the highway apparently caused by the area settling, one such low place being where the pool of water here involved was located.

There is substantial and practically uncontradicted evidence that prior to October of 1943, Linden Avenue and the sidewalk area were frequently flooded during rainstorms. An eyewitness, who arrived at the scene immediately after the accident, testified as to the existence of the pool covering the sidewalk, shoulder and west side of the highway. There was substantial evidence from which the jury could have found that this flooded condition existed for a considerable period prior to the accident and was known to the city officials, such as the works engineer, superintendent of streets and to mem-

bers of the city council. There is substantial evidence that this flooded condition was caused by inadequate drainage facilities well known to the city officials to be inadequate. In fact, the city, sometime prior to October, 1943, had started to level the sidewalk area on the west side of Linden Avenue and to insert larger and more numerous drainage culverts, and prior to the accident had awarded a contract to a private contractor to pave the sidewalk area.

Thus, there was substantial evidence that the street and sidewalk were negligently maintained, and that the proper city officials had notice of this defective condition prior to the accident. The city does not seriously contend to the contrary, and if it did, such contention would be contrary to the record. The city does contend, however, and the trial court ruled that, as a matter of law, the negligence of Iverson broke the chain of causation, so that the city's negligence was not a proximate cause of the accident.

It is usually stated that the question of proximate cause is one of fact and not one of law. It is a question of foreseeability. Where two independent actors are involved, whether the act of the person later in time breaks the chain of causation and makes the act of the earlier person a remote cause, or whether both acts concurred in causing the injury, so that both are proximate causes, are normally questions for the trier of the fact where the act of the second person is reasonably foreseeable. It is a rare case where the court may hold, as a matter of law, that the intervening act breaks the chain of causation because whether it was reasonably foreseeable is a question of fact and not of law. The second act will break the chain of causation only where, under no rational interpretation of the evidence, could the later act of negligence have been reasonably foreseen.

These principles have been established in this state for many years. One of the earliest and most frequently cited cases on the subject is *Pastene* v. *Adams,* 49 Cal. 87, where a lumber company negligently piled lumber so that some of the ends stuck out into the private driveway of the lumber yard. X negligently drove his cart so that its wheels caught one of the projecting timbers and pulled the pile down on plaintiff, a pedestrian and customer of the lumberyard. The court, in affirming a judgment for the plaintiff against the lumberyard, held that since the lumber company was negligent in piling the timbers "the negligence continued until they were

thrown down, and (concurring with the action of Randall) was a direct and proximate cause of the injury.'' (P. 90.)

The rule of the Pastene case has consistently been followed in many cases where, because the first actor negligently maintained an obstruction in the public streets, the plaintiff has been required to go around the obstruction and has been injured as a result of the negligence of a second actor. In such cases it has been held that the second act of negligence was reasonably foreseeable and that both actors may be held. Thus, in *Fennessey* v. *Pacific Gas & Elec. Co.*, 20 Cal.2d 141 [124 P.2d 51], the defendant parked its truck between a streetcar passenger zone and the curb. This required X, in direct violation of a city ordinance, to drive on the streetcar tracks where he hit the plaintiff. A judgment against the defendant was affirmed on the ground that it was for the jury to say whether its negligence was continuing and concurrent, or whether it was a mere remote cause of the accident, and whether the act of X was reasonably foreseeable.

In *Mecchi* v. *Lyon Van & Storage Co.*, 38 Cal.App.2d 674 [102 P.2d 422], a moving van was parked so as to obstruct one entire side of a public street. B was thus required to drive on the wrong side of the street to get around the van, which he did in a negligent fashion and injured the plaintiff. A judgment against the moving company was affirmed, the court holding that the jury was justified in finding that the negligence of the moving company was concurrent with that of B.

In *Inai* v. *Ede*, 59 Cal.App.2d 549 [139 P.2d 76] (same case on a prior appeal, 42 Cal.App.2d 521 [109 P.2d 400]), the defendant negligently parked his auto so that it projected into the highway. X negligently drove his car so that it hit the car of defendant and it ran into the plaintiffs who were trying to walk around defendant's car. A judgment against defendant was affirmed.

In *Hansen* v. *Market Street Ry. Co.*, 64 Cal.App. 426 [221 P. 955], the defendant water company excavated a trench in the street and, in violation of a city ordinance, left a pile of dirt in the street. This required plaintiff to walk around the pile, where he was injured by a streetcar. A nonsuit in favor of the water company was reversed, the court holding that whether its negligence was concurrent or remote, was for the jury. (See, also, *McKay* v. *Hedger*, 139 Cal.App. 266 [34 P.2d 221]; *Lacy* v. *Pacific Gas & Electric Co.*, 220 Cal. 97 [29 P.2d 781]; *Merrill* v. *Los Angeles Gas & Elec. Co.*,

158 Cal. 499 [111 P. 534, 139 Am.St.Rep. 134, 31 L.R.A.N.S. 559]; *Stasulat* v. *Pacific Gas & Elec. Co.*, 8 Cal.2d 631 [67 P.2d 678]; *Gerberich* v. *Southern Calif. Edison Co.*, 5 Cal.2d 46 [53 P.2d 948]; *Katz* v. *Helbing*, 215 Cal. 449 [10 P.2d 1001]; 2 Restatement of Torts, § 453.)

The test applied in such cases is whether the intervening negligent act was reasonably foreseeable. Thus, in *Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213 [157 P.2d 372, 158 A.L.R. 872], the milk company negligently piled milk crates alongside a sidewalk. Some unknown person moved the crates into an adjoining field. Plaintiff was injured when his tractor ran into one of these crates hidden in the weeds. A judgment against the milk company was affirmed, it being held that whether the negligent or unlawful act of the third person was reasonably foreseeable was a question of fact for the jury.

A good statement of the rule is found in *Sawyer* v. *Southern California Gas Co.*, 206 Cal. 366 [274 P. 544]. There, the gas company connected a gas meter to a pipe that, unknown to it, inside a building, was uncapped. The company, however, did not turn on or authorize anyone to turn on the meter. Many months later a third person turned on the gas and plaintiff was injured in the resulting explosion. A nonsuit in favor of the gas company was reversed. The court, quoting from *Hale* v. *Pacific Tel. & Tel. Co.*, 42 Cal.App. 55 [183 P. 280], stated (p. 374) : " 'The rule, as we understand it, applicable to such cases, is that where the original negligence of a defendant is followed by an independent act of a third person which results in a direct injury to a plaintiff, the negligence of such defendant may, nevertheless, constitute the proximate cause thereof if, in the ordinary and natural course of events, the defendant should have known the intervening act was likely to happen; but if the intervening act constituting the immediate cause of the injury was one which it was not incumbent upon the defendant to have anticipated as reasonably likely to happen, then, since the chain of causation is broken, he owes no duty to the plaintiff to anticipate such further acts, and the original negligence cannot be said to be the proximate cause of the final injury.' "
Then, the court stated (p. 376) : "The probability of an accident happening through the acts of a third person in the manner in which it did happen, in the circumstances of the case, presented an issue of fact that may well have been submitted to the jury."

In the instant case the city negligently permitted a large pool of water to exist, making the sidewalk area and half the street impractical for pedestrians to use. The city knew that a large number of pedestrians had to walk along that street. Certainly, it was for the jury to say whether, as a result of the city's negligence, pedestrians were reasonably liable to walk in the street where they might be injured by automobiles.

The city relies primarily on the case of *Klarquist* v. *Chamberlain & Proctor,* 124 Cal.App. 398 [12 P.2d 664], as establishing a contrary rule in sidewalk obstruction cases. In that case a contractor was building a sidewalk in complete accord with city ordinances. The sidewalk was blocked off lawfully. A pedestrian was forced, therefore, to walk around a parked truck and was hit by a negligently driven automobile. A judgment against the contractor was reversed. The court pointed out that here the construction work was being lawfully and properly performed, and held that, in such event, the contractor was not bound to anticipate "the reckless act of a third party." The court quoted from a New York case, *Storey* v. *City of New York,* 29 App.Div. 316 [51 N.Y.S. 580], which contains some language contrary to that used by the California courts in the many cases above cited. It is interesting to note that in *Murphy* v. *Leggett,* 29 App.Div. 309 [51 N.Y.S. 472], which was decided by the same court that decided the Storey case and immediately precedes that case in the reports, a defendant was held liable who obstructed, unlawfully, the sidewalk.

Although there is some confusing language in the Klarquist case, that decision can be explained only on the theory that there the contractor was acting lawfully in obstructing the sidewalk. In other words, the real question was not whether the intervening act of negligence broke the chain of causation, but whether, in the first instance, the contractor was negligent. The court held that there was no evidence of negligence, so there was no liability. The case has been distinguished on this precise ground by the District Court of Appeal in *Inai* v. *Ede,* 59 Cal.App.2d 549 [139 P.2d 76] (same case on prior appeal, 42 Cal.App.2d 521 [109 P.2d 400]), and by the Supreme Court in *Lacy* v. *Pacific Gas & Electric Co.,* 220 Cal. 97 [29 P.2d 781]. If the case stands for the broad proposition that one who negligently blocks a sidewalk, as a matter of law, is not liable to one who is injured by the negligence

of a third person while walking around the obstruction, the case is wrong and should be disapproved.

The city makes a final contention that plaintiffs were guilty of contributory negligence as a matter of law because they were not walking on the left-hand side of the street as provided by section 564 of the Vehicle Code. The contention is palpably unsound. There was a sidewalk area for pedestrians on the west side of the street, and none on the other side. Plaintiffs were not walking in the street in the sense that those terms are used in section 564, but were walking around the pool intending to get back on the sidewalk area. The section has no application to the facts of this case.

The judgment of nonsuit is reversed.

Bray, J., and Schottky, J. pro tem., concurred.

The opinion was modified to read as printed above on March 29, 1950.