[Civ. No. 5464. Third Appellate District.—November 6, 1936.]

JESSIE MANUEL, Respondent, v. CALISTOGA VINE-
YARD COMPANY (a Copartnership) et al., Appel-
lants.

Rutherford, Rutherford & Rutherford and Wallace Rutherford for Appellants.

Clarence N. Riggins and Mervin C. Lernhart for Respondent.

PULLEN, P. J.—This is an appeal from a judgment based upon a verdict of a jury awarding to plaintiff the sum of $1484.80 for grapes delivered to defendants.

Originally the complaint was in three counts. To this complaint a general demurrer was interposed and overruled, whereupon defendant answered. Upon the trial a nonsuit was granted as to the first two causes of action in the complaint, of which ruling no complaint is made so that we confine ourselves to the consideration of the third count in the complaint.

This count alleges the corporate capacity of the Calistoga Vineyard Company, Ltd., and that this corporation had assumed the assets and liabilities of the Calistoga Vineyard Company, a preexisting partnership. It then alleges that during the months of August, September and October, 1930, Thomas A. Turner was the agent of defendant company, a partnership, for the purpose of purchasing, obtaining and negotiating for the sale of grapes to and through the Calistoga Vineyard Company, a copartnership; that in the course of his employment as agent he represented and promised to plaintiff that if plaintiff would sell his grape crop to Calistoga Vineyard Company, said company would pay him $30 a ton therefor. Plaintiff, it is alleged, believed and relied upon said representations and delivered to the company a specified number of tons, and by an amendment permitted at the time of trial, plaintiff set forth he would not have so sold and delivered the grapes to defendant were it not for the fact he believed and relied upon such representations.

It is also alleged that at the time the representations were made they were made fraudulently by the agent of defendant for the purpose of deceiving plaintiff into delivering his grape crop to the Vineyard Company, and in making said promise to plaintiff, the agent did not believe the same and it was made without intention of performance. This briefly is the gist of the cause of action upon which the case was tried.

■ Appellants point out various deficiencies in the complaint, claiming there was no allegation that the statement the company would pay $30 per ton for the grapes was false; there was no allegation that the company would not have paid plaintiff for the grapes if they had been sold by him to the company or that he did in fact sell his grapes to the company, or that the agent knew the statements were untrue, or that the company had any notice or knowledge of the representations of Turner, or that the company would

not, upon demand, have carried out the agreement. It will be observed that the action is not for the fraudulent representations of existing facts but in making promises without any intention of performance. These deficiencies in the complaint, if they were such, could have been reached by special demurrer, but in the absence of such a demurrer they cannot now be considered. A reference to the third count of the complaint will show that the facts demanded by appellant appear at least by inference, being at most an insufficient statement of the facts, and not insufficient facts, and it has been frequently held the objection that essential facts appear only inferentially must be raised by special demurrer. (*City of Santa Barbara* v. *Eldred,* 108 Cal. 294 [41 Pac. 410]; 21 Cal. Jur. 108.) The third count was therefore sufficient against a general demurrer.

█ Upon the motion for a nonsuit appellants urged that the evidence was insufficient to sustain certain material allegations, and among others, that the evidence failed to show that Turner had any authority to purchase grapes for the company or that the company had knowledge of any purchase of grapes from plaintiff by Turner, or that the company accepted or had any knowledge that the grapes were delivered by plaintiff to it as owner.

Respondent recognizes the rule that where a third party seeks to hold a principal to a guaranty made by an agent, the burden is upon such party to prove the authority of the agent to make the contract. Such was the holding in the case of *Peterkin* v. *Randolph Marketing Co.,* 48 Cal. App. 300 [191 Pac. 947], for that judgment was reversed on the ground that there was no actual authority and no evidence tending to show any act on the part of the defendant from which a conclusion could be drawn that the agent had apparent authority to either purchase or guarantee a price at which it was to be sold. In that case, however, the court conceded it to be the law that if the agent was clothed with ostensible authority the principal was estopped from denying that the agent was authorized to make the agreement. In the case of *Perkins* v. *Pacific Fruit Exchange,* 132 Cal. App. 278 [22 Pac. (2d) 535], the court not only held there was no evidence that the agent was expressly or impliedly authorized to make the guaranty of a minimum return but further held that the grower must be

presumed to have knowledge that under the terms of the "Deciduous Fruit Dealers Act" of 1929 (Deering's Gen. Laws, Act No. 6155) under which the fruit company therein was authorized to act, that neither the principal nor the agent could legally make the contract sued upon in that the appellant was not a deciduous fruit dealer under the act, but came within the terms of a "consignment shipper" as defined therein.

In the case at bar defendants and appellants had a deciduous fruit dealer's license authorizing "the purchase of deciduous fruits from the producer on credit, or to verbally or in writing guarantee a price to the producer of deciduous fruits received from the producer on consignment, or to verbally solicit from the producer deciduous fruits to be used on an order at a named price", and did not come within the terms of a "consignment shipper" as defined by the act, and under the presumption that the ordinary course of business had been followed, respondent had a right to believe that the defendants were deciduous fruit dealers and acted as such and did not act as a "consignment shipper".

In the instant case the plaintiff testified that Turner represented to him that he was acting for the Calistoga Vineyard Company, and that this company had contracts for the sale of a large quantity of grapes but did not have enough grapes to fill the order, and that there was money in the bank on deposit on this contract, and promised him $30 per ton for his grapes, and agreed that he would receive $500 on account, and believing and relying upon these representations, delivered his crop to the Calistoga Vineyard Company.

Upon the question of ostensible authority, that is, such authority as a principal, intentionally or by want of ordinary care, causes or allows a third party or the agent to possess, the evidence discloses that Charles Forni, one of the copartners in the Calistoga Vineyard Company, testified that Turner was employed to go among the growers for the purpose of soliciting grapes for consignment and further testified that Turner acted for him at the receiving platform of the Southern Pacific depot, at Calistoga. The witness admitted that he purchased grapes during the year 1930. It also appeared that about the time plaintiff claims to have had the agreement with Turner, Forni is alleged to have had

a conversation with a brother of the plaintiff in the presence of Turner in which the brother informed Mr. Forni that Turner was offering $30 a ton for his grapes, and Mr. Forni is alleged to have said, "Yes, we are offering $30.00 a ton for them. I advise you to take it because it is a pretty good offer, and we have $30,000.00 in the bank, and you are sure of getting your money." The brother informed plaintiff of this conversation.

Plaintiff also claims that the authority of Turner was established by ratification, and in support of that the evidence discloses that when plaintiff had his grapes weighed he was given weight certificates showing delivery of his grapes to Calistoga Vineyard Company and the weight certificates were received by the weighmaster of the Calistoga Vineyard Company. When the grapes were delivered at the shipping platform Turner directed plaintiff where they should be unloaded. Mr. Forni admitted that Turner was then acting for him at the depot. It also appears that the agent when making the agreement with plaintiff agreed to pay $500 on account at the time of delivery, and the company did pay the $500 upon delivery, all tending to indicate a ratification of the promise of the agent.

Appellants claim that certain witnesses for respondent did not tell the truth and that their testimony was discredited. As to that we have nothing to say. The jury evidently believed the testimony and they are the triers of fact.

Some point is made by appellants that the allegation in the complaint was that if plaintiff would sell his crop to the Calistoga Vineyard Company, the company would pay to plaintiff $30 a ton, but at the trial plaintiff testified that the agent said "we will guarantee you $30.00 per ton". In view of the surrounding circumstances, the use of the word "guarantee" could be construed as synonymous with promise, and undoubtedly the jury so believed.

Complaint is made of certain instructions and their order of presentation to the jury. The sequence in which instructions are given is a matter almost entirely in the sound discretion of the trial court, and it would require a very strong showing of deliberate prejudice before this court would consider such obligation. No such prejudice is even here intimated, the objection being the various instructions

were not given in a logical order, thereby making it more difficult for the jury to follow. ██ Complaint is made also that the judge grouped the instructions as those proposed by plaintiff and those proposed by defendants and those given by the court, and before reading each group, announced to the jury by whom proposed. While this practice is frequently followed by trial judges, it is not to be commended. The instructions are the principles of law applicable to the facts of the particular case and are given by the court. Their applicability should not be affected by crediting them to either the one side or the other. We cannot, however, charge the practice as error.

We have examined the questioned findings together with all of the instructions given. It would serve no useful purpose to set forth the instructions complained of for we are convinced that even if the criticism were well founded the giving of these instructions did not result in a miscarriage of justice. The case as a whole was fairly tried and fairly decided.

██ Some of the criticism is directed at the giving of certain instructions submitted by appellants themselves as applicable to the first and second counts of the complaint as to which a nonsuit was granted. Before counsel can complain they should have sought to withdraw such of their proposed instructions as they deemed applicable to the issues removed from the consideration of the jury by the granting of a nonsuit. It would be unfair to the trial court to permit counsel to submit instructions at large and later be heard to complain that such instructions had no application to the particular issues as finally submitted to the jury.

██ The last objection urged by appellants is that the amount of the verdict was not supported by the evidence, the verdict of the jury being for $1484.80. The action was for the value of 55⅓ tons of grapes at $30 a ton, which would be $1660; a cash advance of $500 was made which reduces the amount by that sum. However, should the jury have computed the interest from the time elapsing between the delivery of the grapes and the trial, it would amount to a sum slightly in excess of the judgment returned. We cannot say just what was the process of reasoning, arithmetic or dates by which the jury arrived at the amount of

the verdict, but the amount as returned falls within the evidence in the case.

Finding no reversible error in the record, the judgment should be affirmed, and it is so ordered.

Thompson, J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 5, 1936, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 4, 1937.