[Civ. No. 23494. Second Dist., Div. Three. July 7, 1959.]

RAMIRO M. RODRIGUEZ, Respondent, v. CITY OF
LOS ANGELES, Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, and William E. Still and Weldon L. Weber, Deputy City Attorneys, for Appellant.

Leo Shapiro for Respondent.

VALLÉE, J.—Plaintiff Ramiro M. Rodriguez brought this suit against the city of Los Angeles and Marcus Meisel for damages for personal injuries. The jury returned a verdict against both defendants. The city of Los Angeles appeals from the judgment. Meisel did not appeal. The suit against the city was under the Public Liability Act. (Gov. Code, §§ 53050 and 53051.)

· The accident occurred about 10:15 p.m. on November 11, 1956, in front of the corner house at Fourth Street and Brooks Avenue in Venice. Meisel owned the property, numbered 402 Brooks Avenue. Plaintiff lived at 412 Brooks Avenue, two houses away from the place of the accident. He had been to his brother's home about two and a half blocks away and was returning home at the time of the accident.

In 1951 a 3- to 3½-foot high wire mesh fence was installed in front of the Meisel property by a former owner. The fence encroached one foot on the dedicated sidewalk area along the entire front of the Meisel property a distance of 50 feet. There was an area 4 inches wide between the fence and the paved portion of the sidewalk. The usable paved portion of the sidewalk was between 8 and 9 feet wide.

A clump of ice plant had grown through the fence onto the sidewalk. The ice plant was about 40 feet from the curb at the corner of Fourth and Brooks. It was about 20 to 24 inches around, 6 to 8 inches high, and extended between 12 and 14 inches onto the concrete portion of the sidewalk.

Plaintiff walked from the corner of Fourth and Brooks east on Brooks. The fence was on his right. As he walked, the right side of his body was about a foot from the fence. He was looking directly ahead; not down on the sidewalk. As he was walking he did not see anything on the sidewalk in front

of him. After he passed a gate in the fence he slipped on the ice plant. On slipping, he fell to his right onto the fence. A wire prong in the fence pierced his right eye. He lost the eye. Photographs in evidence show numerous wire prongs protruding from the top of the fence.

An ordinance of the city provided that no person owning any lot "shall allow, keep or maintain any tree, bush or vegetation growing upon any lot or premises, abutting any street or sidewalk or upon any street or sidewalk so that the limbs, twigs, leaves or parts of such tree, bush or vegetation interfere with or obstruct the free passage of pedestrians or vehicles along or upon said streets or sidewalks."

The city's first specification of error is that the court erred prejudicially in instructing the jury in that liability of the city was overemphasized and the city's liability under the Public Liability Act was confused with the liability of an abutting property owner for obstructing a sidewalk in violation of an ordinance of the city as negligence *per se*. It is said the court instructed the jury three separate times in respect to the liability of the city and provisions of the Public Liability Act; that such emphasis was clearly unnecessary and could only serve to prejudice the jury against the city's case. There is no contention that the instructions did not correctly state the law.

There were 13 instructions of which the city complains. They include sections 53050 and 53051 of the Government Code,[1] read verbatim, and other instructions elucidating the requirements of section 53051 and telling the jury plaintiff could not recover unless all the requirements were met. These instructions were favorable to the city.[2] Repetition of the

---

[1]Section 53050: "As used in this article: . . .

"(b) 'Public property' means public street, highway, building, park, grounds, works, or property.

"(c) 'Local agency' means city, county, or school district."

Section 53051: "A local agency is liable for injuries to persons and property resulting from the dangerous or defective condition of public property if the legislative body, board, or person authorized to remedy the condition:

"(a) Had knowledge or notice of the defective or dangerous condition.

"(b) For a reasonable time after acquiring knowledge or receiving notice, failed to remedy the condition or to take action reasonably necessary to protect the public against the condition."

[2]Examples of instructions criticized are:

"In determining what constitutes a reasonable time after notice within which a municipality must remedy, or take action to protect the public against a dangerous or defective condition in or on its sidewalk, in order to avoid liability for injury, you should consider all the circumstances involved; the cause and nature of the condition, the practical problem

elements necessary in order that the jury find liability on the part of the city could only serve to emphasize in the minds of the jurors the necessity that these elements be established. If there was any overemphasis, the city cannot complain.

 Three other instructions complained of are set forth in the margin.[3] They were correct statements of the law, not

presented, the amount of work required, the resources in men and money available to cope with the problem, and in general the necessities and size of the effort.''

''A dangerous or defective condition, as denoted by the use of that term in these instructions, means a condition on or of the sidewalk in question that would have caused it to be not reasonably safe for persons who, with ordinary care for their own safety, used said sidewalk, or might have used it for the purpose intended, or as expressly or impliedly invited, or as permitted by the controlling authority.''

''A municipality is not a guarantor of the safety of persons using its streets and sidewalks. It may not be held liable for minor defects or imperfections not involving danger such as just described. It is not required to keep its sidewalks in an absolutely safe or perfect condition or free from other defect that possibly might lead to injury, unless any condition short of perfection is a dangerous condition, as I have defined the term.''

''The law just read to you is the only authority under which this action can be maintained, if at all, against the defendant City of Los Angeles; and it follows that before the plaintiff may be entitled to your verdict against the City of Los Angeles, you must find from a preponderance of the evidence:

''First: That plaintiff suffered an injury of which a proximate cause was some dangerous or defective condition in or on the sidewalk in front of the premises at 402 Brooks Avenue, Venice, California.

''Second: That before the accident in question, the legislative body of the City of Los Angeles, or whatever board, officer, or person was authorized to remedy the dangerous or defective condition, had knowledge or notice thereof.

''Third: That before the accident in question, such board, body, officer, or person had a reasonable time after receiving such notice to remedy the condition or to take such action as was reasonably necessary to protect the public against it, and failed to do either.''

[3]These instructions are:

''If you should find to have existed all the conditions I have mentioned as being a requisite to establish liability against the defendant City of Los Angeles, it is not necessary that the dangerous or defective condition in question was the sole proximate cause of the injury. If it was a proximate cause, and the other requisite elements were present, said defendant will not be permitted to avoid liability by proof that some other circumstance was a concurring cause of the injury.''

''A pedestrian is entitled to the free and unobstructed use of the entire sidewalk for the purposes of travel. The fact that the plaintiff was walking close to the fence does not in and of itself constitute negligence or contributory negligence on his part.''

''It was the duty of the City of Los Angeles to keep the sidewalk involved in a reasonably safe condition. If you find that a dangerous or defective condition existed, of which it had notice, it is not relieved of its responsibility merely because the condition was created or maintained by a property owner who might also be liable to pedestrians for injuries resulting therefrom.''

repetitious, and applicable to the facts. Moreover, the court told the jury, "If in these instructions any rule, direction or idea be stated in varying ways, no emphasis thereon is intended by me, and none must be inferred by you."

■ Furthermore, the city is in no position to complain. It has furnished a record which does not disclose the source of any of the instructions—whether given at the request of plaintiff or at its request, or on the court's own motion. (*Paxton* v. *County of Alameda,* 119 Cal.App.2d 393, 414 [259 P.2d 934].)

■ It is asserted the instructions were given in an order which confused the statutory liability of the city under the Public Liability Act with the liability of a property owner who maintains something on a sidewalk which endangers pedestrians. We have examined the 85 instructions given and find no basis for the assertion. The court expressly told the jury that the order in which the instructions were given had no significance. Nowhere in the instructions was there even a remote suggestion that the city could be liable under the provisions of the ordinance of the city applicable to owners of property abutting on sidewalks. It was clearly and repeatedly stated that the city's liability, if any, could only be under section 53051 of the Government Code. ■ Our observations in *Nungaray* v. *Pleasant Valley etc. Assn.,* 142 Cal.App. 2d 653 [300 P.2d 285], are pertinent. In Nungaray we said (p. 661) :

"The instructions are to be considered as a whole, and the court so instructed the jury. The sequence in which instructions are given is a matter in the sound discretion of the trial court, and a very strong showing of prejudice must be made before a reviewing court will hold its discretion abused. (*Manuel* v. *Calistoga Vineyard Co.,* 17 Cal.App.2d 377, 382 [61 P.2d 1204].) The point 'borders on the realm of psychology wherein the law seems loath to enter.' (*Ritchey* v. *Watson,* 204 Cal. 387, 390 [268 P. 345].) The instructions gave the jury a well balanced statement of the essential legal issues. If defendants were dissatisfied with the sequence in which the instructions were given, it was their duty to say so at the time and thus give the court an opportunity to remedy the claimed defect. They did not do so and they are precluded from raising the question on review."

■ So, here, if the city was dissatisfied with the sequence in which the instructions were given or if its counsel felt

the jury might be confused, it was his duty to say so at the time. Counsel did not do so. It is too late to complain.

*Pittam* v. *City of Riverside,* 128 Cal.App. 57 [16 P.2d 768], relied on by the city, is not in point. In Pittam the city was the only defendant. Instructions were given on the law of general negligence when the only possible liability of the city was under the Public Liability Act. The court correctly held that the instructions on general negligence conflicted with an instruction on the Public Liability Act, that the contradictory instructions might well have confused the minds of the jurors, and that on the evidence the conflict was prejudicial. We have no such state of facts at bar.

The city's only other specification of error is that there was no evidence that its failure to cause the ice plant and the fence to be removed from its sidewalk was a proximate cause of plaintiff's injury, and that there is no evidence that it, in the exercise of due care, could have reasonably fore-seen that injury would likely occur.

The city does not challenge the implied findings of the jury that it had knowledge of the condition of the ice plant and the fence, and that after acquiring knowledge it failed to remedy the condition. (Gov. Code, § 53051.)

The district inspector for street inspection for the city's board of public works in Venice held that position about 10 years. His duties "consisted of anything dangerous to the public, like streets, sidewalks . . . hanging wires. . . . We had to watch out for that stuff. . . . We patrolled and complaints came into the office." He patrolled the area in which the accident occurred two or three times a week over a period of about eight years prior to the accident. Prior to the accident he had received complaints concerning the fence. In April 1956 a woman complained that the sleeve of her coat had been torn by one of the prongs that was "hanging out" on the top of the fence. He investigated and found about 15 prongs. "Those are prongs that stick up from the top of the wire fence. They cut them off in half—they cut them in half and they leave the two prongs sticking up there." The tips of the prongs were sharp. "They looked like they were dangerous." A photograph in evidence shows the prongs referred to protruding toward the sidewalk. The ice plant was on the sidewalk. He had had complaints about the ice plant growing on the sidewalk by the fence in "the last three or four years, five years." In August 1956 one of the prongs

went through a boy's hand. The boy's mother complained and he investigated. He saw blood on the sidewalk. The prongs were bent out. Every time he stopped he bent "back about fifteen or twenty of them." In August 1956 the ice plant extended between 12 and 14 inches onto the concrete portion of the sidewalk. It was about "20 inches around, 24 inches," and between 4 and 5 inches high. He knew, as long as four or five years before November 1956, that the fence was on the city's sidewalk easement. He so informed the chief inspector and was told "not to issue any notices or complaints for violations unless a complaint was made by somebody."

▋ "The city is under a duty to keep sidewalks in safe condition, it is directly liable to pedestrians for failing to correct a dangerous condition of which it had notice, and it is not relieved of its responsibility in this regard merely because the condition was created or maintained by a property owner who might also be liable to pedestrians for injuries resulting therefrom." (*Peters* v. *City & County of San Francisco,* 41 Cal.2d 419, 429 [260 P.2d 55].) ▋ Whether there was a causal connection between the failure of the city to cause the ice plant and the fence to be removed and plaintiff's injury was for the jury. ▋ Where different inferences may reasonably be drawn from the same evidence, the decision must be left to the triers of fact. The conclusion of the jury will not be disturbed on appeal if some substantial evidence or reasonable inference lends support thereto. (*Nichols* v. *Mitchell,* 32 Cal.2d 598, 606 [197 P.2d 550].) ▋ Want of proximate cause does not exist as a matter of law unless the only reasonable hypothesis is that such want exists; reasonable or sensible men could have drawn that conclusion and none other. Where there are differences that may be drawn, one for and one against, the one against will be followed. ▋ Before it can be held as a matter of law that want of proximate cause exists, the evidence must point unerringly to that conclusion. (*Smith* v. *Schwartz,* 14 Cal.App.2d 160, 164 [57 P.2d 1386]; *Traylen* v. *Citraro,* 112 Cal.App. 172, 175 [297 P. 649]; *Rovegno* v. *San Jose Knights of Columbus Hall Assn.,* 108 Cal.App. 591, 595, 596 [291 P. 848].) ▋ If the conditions stated in section 53051 of the Government Code "are shown to exist, a city is liable for the dangerous and defective condition of a sidewalk resulting in injury to a pedestrian." (*Gentekos* v. *City & County of San Francisco,* 163 Cal.App.2d 691, 696

[329 P.2d 943].) ■ "When a pedestrian, in the darkness of night, while exercising ordinary care, falls over an obstruction in a sidewalk existing by reason of the negligence of the city, the municipality is liable." (*Redmond* v. *City of Burbank*, 43 Cal.App.2d 711, 713 [111 P.2d 375].) ■ On the evidence the jury could reasonably conclude that the city's failure to cause the ice plant and the fence to be removed was a proximate cause of plaintiff's injury. (*Eastlick* v. *City of Los Angeles*, 29 Cal.2d 661, 673 [177 P.2d 558, 170 A.L.R. 225]; *Jones* v. *City of South San Francisco*, 96 Cal.App.2d 427, 433 [216 P.2d 25].) And the evidence was such that the jury could fairly conclude that the city, in the exercise of due care, could have reasonably foreseen that injury would likely occur. (*Jones* v. *City of South San Francisco*, 96 Cal.App.2d 427, 435-438 [216 P.2d 25].) In fact, numerous complaints had been received by the city and injury had occurred.

It is asserted the defective condition was trivial and that as a consequence it was not a proximate cause of plaintiff's injury. ■ A city is not liable for a trivial defective condition that could not reasonably be anticipated to result in accidents. (*Gentekos* v. *City & County of San Francisco*, 163 Cal.App.2d 691, 697 [329 P.2d 943].) ■ Whether a defective condition was trivial will be determined by a reviewing court irrespective of the finding of the trier of fact. (*Barrett* v. *City of Claremont*, 41 Cal.2d 70, 73 [256 P.2d 977].) We think it manifest that in the case at bar it cannot be said as a matter of law that the defective condition was trivial. The testimony of the city inspector together with our study of the photographs preclude our so determining. (*Cf. Gentekos* v. *City & County of San Francisco*, 163 Cal. App.2d 691 [329 P.2d 943]; *Adams* v. *City of San Jose*, 164 Cal.App.2d 665 [330 P.2d 840]; *Reinach* v. *City & County of San Francisco*, 164 Cal.App.2d 763 [331 P.2d 1006].)

It is intimated that plaintiff was contributively negligent as a matter of law. ■ "It is well settled that, in the absence of notice or knowledge to the contrary, a pedestrian making normal use of the public sidewalk has a right to assume that it is in reasonably safe condition, and while he must use ordinary care for his personal safety and make reasonable use of his faculties to avoid injury to himself, he is not required to keep his eyes fixed on the ground or to be on a constant lookout for danger. [Citations.] ■ Even if a defect is one which might be visible to a person who is look-

ing for such a condition, it does not follow that a pedestrian is guilty of negligence as a matter of law in failing to see and avoid it. [Citations.] Whether plaintiff made reasonable use of her faculties and whether she should have observed the condition which caused her injury were questions of fact." (*Peters* v. *City & County of San Francisco,* 41 Cal.2d 419, 424 [260 P.2d 55].) The evidence was clearly sufficient to support the implied finding of the jury that plaintiff was not contributively negligent. (*Cf. Eastlick* v. *City of Los Angeles,* 29 Cal.2d 661, 674 [177 P.2d 558, 170 A.L.R. 225].)

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.