[Civ. No. 27653.   Second Dist., Div. Four.   April 16, 1964.]

BEILA GARBER, Plaintiff and Appellant, v. CITY OF LOS ANGELES, Defendant and Respondent.

Betty Aronow for Plaintiff and Appellant.

Roger Arnebergh, City Attorney, Bourke Jones, Assistant City Attorney, Lawrence J. Moreno and John A. Daly, Deputy City Attorneys, for Defendant and Respondent.

BURKE, P. J.—Plaintiff sued the City of Los Angeles for damages for personal injuries resulting from a fall caused by the defective condition of a public sidewalk. After plaintiff rested her case, defendant city moved for judgment pursuant to section 631.8 of the Code of Civil Procedure without producing evidence. The motion was granted, findings that the city had no actual or constructive notice of the dangerous condition and that plaintiff was contributorily negligent were made, and judgment was entered for the city. A motion for new trial was denied. Plaintiff appeals from the judgment and order denying the motion for a new trial.

The facts are simply stated and present the fall of a pedestrian caused by a depression or defect in the sidewalk in front of 1601 South Shenandoah Avenue, Los Angeles. Plaintiff was 71 years of age, in good health, the day was sunny, and the time 2 p.m. Plaintiff wore bifocal glasses and cuban-heel-type shoes. She had previously walked over the same sidewalk in the opposite direction and had noticed nothing unusual about the sidewalk nor did she perceive any dangerous condition at the time of her accident. As a result of her fall she sustained a broken nose. There was no evidence that

any actual notice to the city of the condition of the sidewalk had been given by anyone prior to the injury.

The photographic exhibits in the record establish the defective condition of the sidewalk (2½ inches of depression at point of maximum difference in levels of adjoining squares of sidewalk surface) to be such that it could not be held a minor defect as a matter of law. In *Johnson* v. *City of Palo Alto*, 199 Cal.App.2d 148, 152 [18 Cal.Rptr. 484], a defect of ⅝ of an inch was held not to be minor. The court defined a dangerous or defective condition as follows in *Jones* v. *City of Los Angeles*, 104 Cal.App.2d 212, at page 215 [231 P.2d 167] : "A dangerous or defective condition, as a basis of liability, is one from which it would reasonably be anticipated injury would occur to those coming in contact with the condition. Stated otherwise, the question is whether the condition created an unreasonable hazard."

Constructive notice may be established by showing long-continued neglect of conditions that should have been known or seen. (*Boyce* v. *San Diego High School Dist.*, 215 Cal. 293, 294 [10 P.2d 62] ; *Edwards* v. *City of San Diego*, 126 Cal.App. 1, 3 [14 P.2d 119].)

In *Balkwill* v. *City of Stockton*, 50 Cal.App.2d 661, 673 [123 P.2d 596], the court stated: " 'Constructive notice is notice received by virtue of facts and circumstances sufficient to put the city officials, as reasonable persons, on notice of the actual condition of the sidewalk *which is alleged to be defective and dangerous*.

" 'If the evidence satisfies you that the city had constructive notice *of the alleged defective and dangerous condition,* the requirements of the law are met the same as if the proof satisfies you that the city had actual notice thereof.' "

Defendant city contends that the "dangerous character" of the defect must be known to the city before liability can be imputed. (*Whiting* v. *City of National City*, 9 Cal.2d 163, 165 [69 P.2d 990] ; *Nicholson* v. *City of Los Angeles*, 5 Cal.2d 361, 364 [54 P.2d 725].) In *Rafferty* v. *City of Marysville*, 207 Cal. 657 [280 P. 118], the court adopted the rule that the fact of previous accidents was evidence upon the *dangerous character* of the defect or condition. (See, also, *Balkwill* v. *City of Stockton, supra,* 50 Cal.App.2d 661; *Gorman* v. *County of Sacramento*, 92 Cal.App. 656 [268 P. 1083].) Accordingly, liability for correction of the defect exists on the part of the city if the city had actual notice of its existence, or constructive notice of its existence

and of its dangerous character, prior to the sustained injury and in sufficient time to permit its repair. Here, as there was no evidence of actual notice having been given to the city, the issue of constructive notice is crucial.

■ Plaintiff's neighbor, Esther Baron, a woman 72 years of age at the time of the accident, testified that in 1954 she had fallen at the same location because of the condition of the sidewalk. Such testimony, while meager, is sufficient to constitute a prima facie showing that the dangerous and defective condition of the sidewalk had existed five years previous to plaintiff's fall, a sufficiently long time to impute notice to the city. It was bolstered by the photographic evidence introduced of the condition at the time of plaintiff's accident. ■ It can be assumed that the city has reasonable periodic inspection of its sidewalks but whether or not such inspection actually took place is immaterial. The testimony of the previous fall is in the record uncontradicted and must be accorded probative value for plaintiff.

■ Common knowledge tells us a sidewalk separation of this magnitude does not normally occur overnight, and it is reasonable to infer from the nature and extent of the defect that its development was a lengthy and gradual process. The photographs in evidence show a large tree in the parkway adjoining the sidewalk which we may infer could well have been the major cause of the separation. Upon a retrial the city would be afforded full opportunity to dispel these inferences if unfounded.

■ Pursuant to section 631.8 of the Code of Civil Procedure, the trial court was empowered to weigh the evidence offered by plaintiff alone and to grant judgment thereon. Such judgment operates as an adjudication on the merits.

The trial court was specifically requested to find on the factual issue of the previous fall and injury, but refused to do so, finding only on the ultimate fact of no notice to the city of the defect, either actual or constructive. (*Wishart* v. *Claudio,* 207 Cal.App.2d 151 [24 Cal.Rptr. 398]; *De Vrahnos* v. *George,* 203 Cal.App.2d 210, 222 [21 Cal.Rptr. 481].)

In 1959 the Legislature enacted an amendment to section 634 of the Code of Civil Procedure, providing in part, "If upon appeal or upon a motion under section 657 or 663 of this code it appears that the court has not made findings as to all facts necessary to support the judgment, or that the findings are ambiguous or conflicting upon a material issue of fact, the court before which such appeal or motion is pending

*shall not infer that the trial court found in favor of the prevailing party on such issue if it appears that the party attacking the judgment made a written request for a specific finding on such issue* either prior to the entry of judgment or in conjunction with a motion under section 663 of this code." (Italics added.)

Prior to the amendment no statutory provision existed which required the trial court to hear or settle objections to proposed findings and special findings were not provided for; if objections were made or special findings offered they did not necessarily become part of the record and were in some cases consigned to the wastebasket. Appellate review was constricted under holdings like those in *Culver* v. *Miller*, 54 Cal.App. 545, 549 [202 P. 338], "It is unnecessary that findings be made upon any other than ultimate facts," and in *Petersen* v. *Murphy*, 59 Cal.App.2d 528, 533 [139 P.2d 49], "It has been held in numerous cases that a finding that all of the allegations of a pleading are true or are untrue is sufficient."

Such decisions were contributing influences to a four-year study of the problem of findings by a State Bar conference committee in conjunction with many bar associations in the United States, the Conference of Delegates, the Board of Governors, and others. In 1957, a proposed bill was drafted amending section 634 of the Code of Civil Procedure. After further consideration by the Joint Legislative Judiciary Committee and further amendments by the Senate Judiciary Committee, the bill was finally enacted into law in 1959. ▉ It is evident from the background of the legislation that its purpose was to discourage the mere finding of so-called ultimate facts when such method left counsel and the appellate court unable to determine the trial court's resolution of the conflicting facts needed for a factual determination of the case. The purpose of the amendment was to compel the trial judge, when requested, to make findings on specified material issues of fact. (*Calloway* v. *Downie*, 195 Cal. App.2d 348, 353 [15 Cal.Rptr. 747].) In *Hine* v. *Carmichael*, 205 Cal.App.2d 663,666 [23 Cal.Rptr. 331], the court stated: "Failure to make definite findings on factual issues presented by pleadings, particularly where there is substantial evidence which would have sustained a finding for the appealing party, requires a reversal."

Thus, a salutary purpose is served by the amendment, and the legislative history and background of the measure leave

no room for doubt as to the legislative intent. (See *Findings of Fact*, 34 State Bar J. 638, 650.)

▉ Here, the fact of the previous accident suffered by the witness, Esther Baron, was one of the material facts prerequisite to the determination by the court that the condition of the sidewalk was hazardous and that such hazard had existed for five years, a period of time certainly more than ample to impute notice to the city of its existence and to permit its correction. Since a special finding was requested as to whether or not the accident to the witness at the same location did occur, failure to so find requires that this court may not infer that such accident did not occur. (Code Civ. Proc., § 634.)

▉ With respect to contributory negligence, the court found: "It is true that plaintiff was negligent in a manner which proximately contributed to her accident, her injuries, and losses." In so finding the trial court remarked: "This accident happened in broad daylight under clear weather conditions with no incident to distract the plaintiff from any attention that she should have been giving as to where she was walking. There was nothing to prevent her seeing what was ahead of her as she walked, or of any condition existing in the sidewalk. Her testimony as to her wearing bifocal glasses, as a result of which she is only able to see forward for some distance and not directly below her, where her feet would be in contemplative stepping in the next few steps, and her statement that she did not look within the area reasonably proximate to where her feet were being placed, also constitutes contributory negligence as a matter of law."

We cannot agree with such interpretation of the evidence or of the law applicable thereto. ▉ To find contributory negligence, the evidence must prove plaintiff failed to act reasonably and that such failure proximately contributed to her injury. ▉ A pedestrian has the right to assume that a public sidewalk is in reasonably safe condition. (*Peters* v. *City & County of San Francisco*, 41 Cal.2d 419, 424 [260 P.2d 55]; *Hook* v. *Point Montara Fire etc. Dist.*, 213 Cal. App.2d 96 [28 Cal.Rptr. 560]; *Rodriguez* v. *City of Los Angeles*, 171 Cal.App.2d 761 [341 P.2d 410]; *Gentekos* v. *City & County of San Francisco*, 163 Cal.App.2d 691 [329 P.2d 943].)

In the *Peters* case the court stated (pp. 423-424): "Plaintiff, an elderly woman, was walking along the sidewalk alone and did not see the depression caused by the driveway. She stepped into it unexpectedly at a point approximately 6 feet

away from the building line and fell to the ground, breaking her hip. ... Plaintiff testified that she was walking along the approximate center of the sidewalk in a leisurely manner, somewhat closer to the building line than to the curb. She had never before been on that side of the street. It was shortly before noon, the weather was clear, and the sun was shining directly overhead. Plaintiff stated that she looked 'straight ahead' as she walked and did not look down at her feet. ... When asked if she saw the particular place in the driveway where she fell, plaintiff said, 'You couldn't. It looks just like the sidewalk. The drop deceives you ... it is not visible until it is too late. It was not visible.' '' The court further said (p. 424) : ''... in the absence of notice or knowledge to the contrary, a pedestrian making normal use of the public sidewalk has a right to assume that it is in reasonably safe condition, and while he must use ordinary care for his personal safety and make reasonable use of his faculties to avoid injury to himself, he is not required to keep his eyes fixed on the ground or to be on a constant lookout for danger.''

In the present case defendant's picture, exhibit ''C,'' clearly establishes that the defective condition of the sidewalk, being approached in the direction in which the picture was taken and plaintiff was walking, is almost imperceptible, but viewed from the opposite direction (plaintiff's exhibits 2, 4) is very apparent. Plaintiff was in good health, wearing good walking shoes. She testified that she looked straight ahead and did not see anything unusual; that she put her heel down ''and when I started to bend my foot, nothing was on the bottom, so I flew, just like somebody pushed me in the back.'' Such is a clear and easily understood explanation of an unexpected fall or near fall due to lack of expected and customary support, commonly experienced during a lifetime by almost everyone.

The gravamen of the issue of negligence, as the trial court apparently viewed it, was plaintiff's wearing of bifocal glasses and her testimony regarding them. The trial court erred in concluding from her testimony that she was ''only able to see forward for some distance and not directly below her, ... that she did not look within the area reasonably proximate to where her feet were being placed, ...'' that she was contributorily negligent as a matter of law.

There was considerable testimony in the record as to what plaintiff could or could not see in the vicinity of her feet, when walking, due to the bifocal lenses she was wearing. She

admitted that if she looked down through the lower lenses in her glasses she couldn't see the ground because they were for close vision, for reading; that in order to see clearly in that area she had to look straight ahead, i.e., through the straight ahead, the upper, lenses in her glasses. This, of course, would require her to lower her head in order to see the ground, which is normally done. She stated that at the time of the accident she ''was walking and looking on the sidewalk ...''; that she saw nothing unusual. There was no evidence that her vision was impaired when so looking at the sidewalk ahead of her. What she could or could not have seen in the area of her feet either through the upper or lower lenses of her glasses, had something caused her to look down, is irrelevant. The fact is she did not look down at her feet. There was no occasion to do so. Her uncontradicted testimony was that she was looking at the sidewalk ahead of her and saw nothing unusual.

As in the *Peters* case, previously cited, in *Rodriguez* v. *City of Los Angeles, supra,* 171 Cal.App.2d 761, the court stated (p. 771), '' '... a pedestrian ... is not required to keep his eyes fixed on the ground or to be on a constant lookout for danger.' ''

██ Unless plaintiff saw something unusual in the sidewalk ahead she had the right to assume the surface would be safe. It would have been negligent for her to walk with her head down with eyes directed to her feet, not looking where she was going. ██ Plaintiff was not negligent as a matter of law, nor is there any evidence to support a finding of contributory negligence on her part. ██ ''The ordinary purpose of sidewalks and streets includes their use by the blind, the very young and the aged, the cripple and the infirm, and the pregnant woman. For such persons to use the streets is not contributory negligence. However, what consitutes due care on their part for their own safety may involve more caution than in the case of one in full possession of judgment, faculties and physical normalcy.'' (David, *Municipality Liability in Tort in California,* 7 So.Cal.L.Rev. 372, 452; *Armstrong* v. *Day,* 103 Cal.App. 465, 472 [284 P. 1083].)

Here, there is nothing in the record that indicates any infirmity in plaintiff as a matter of law. She wore bifocal glasses to remedy, not to augment, any visual handicap which she may have had. So do thousands of other citizens who use the public streets, highways and sidewalks. ██ Whatever may be the measure of duty in cases of persons with extreme and unusual handicaps, the duty of the city clearly is to

maintain the public ways in a condition safe for use by persons such as plaintiff who suffer only from the infirmities common to most persons who have reached middle age and to many even younger. ██ It is not the law that the mere wearing of bifocal glasses makes a normal walk, in normal posture, an act of negligence.

██ Plaintiff asserts she was denied the benefits of discovery. Prior to trial, plaintiff moved the court in discovery proceedings, after written interrogatories had revealed that defendant city had procured statements, for an order requiring defendant city to permit inspection of written statements of Adler and Akon, two alleged witnesses. The following minute order appears in the record:

"Defendant waives written notice of motion and time and stipulates that oral motion may be heard at this time. Counsel for plaintiff states that she is advised that the witness Kane (named as Akon) is now deceased and that she has talked with but not taken the deposition of the witness Adler.

"Motion denied for want of sufficient showing of good cause.

"Notice waived."

Plaintiff had the obligation of showing good cause in support of her motion. ██ It may be argued that when defendant city stipulated to the oral motion and that good cause might be shown orally it waived the formal requirement that the motion be supported by an affidavit of merits. This did not relieve plaintiff of the burden of showing such good cause. ██ There is no record of the oral proceedings before the judge who heard the discovery motion, so it must be assumed the showing made was insufficient. If sufficient, it would have constituted an abuse of discretion for the trial court to have denied the motion. (*Greyhound Corp.* v. *Superior Court*, 56 Cal.2d 355, 391 [15 Cal.Rptr. 90, 364 P.2d 266].)

Other points contended by both parties on appeal are irrelevant in view of the above determinations.

The judgment is reversed and the cause is remanded for a new trial. The appeal from the order denying the motion for new trial is dismissed.

Jefferson, J., and Kingsley, J., concurred.

A petition for a rehearing was denied May 8, 1964, and respondent's petition for a hearing by the Supreme Court was denied June 9, 1964.