Filed 11/17/21 Gonzalez v. City of San Buenaventura CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| MARIA GONZALEZ,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CITY OF SAN BUENAVENTURA,<br><br>    Defendant and Respondent. | 2d Civ. No. B309961<br>(Super. Ct. No. 56-2019-00524094-CU-PO-VTA)<br>(Ventura County) |

   Maria Gonzalez appeals a summary judgment the trial court granted in favor of defendant City of San Buenaventura (City) on her personal injury action alleging a dangerous condition on a City-owned sidewalk. We conclude, among other things, that the trial court erred because there are triable issues of fact. We reverse.

FACTS

   On June 16, 2018, at 7:10 in the morning, Gonzalez, an elderly grandmother, was walking on the sidewalk in the City for her daily exercise. She had been doing daily walks for about 20

1

years.  She approached a portion of the sidewalk that had a crack in the cement.  It was a jagged-edged, irregular-shaped elevated crack that extends to almost the entire width of the sidewalk.  The defect elevated the broken area of the sidewalk up to a maximum height of "1 and 3/16 inches" above the normal level of the sidewalk.

In her deposition Gonzalez testified she fell because her foot "got caught on the cement" crack and she "went flying."  The City's attorney asked her, "Was there anything blocking your view of the rise?"  Gonzalez:  "No."  When asked where she was looking, she said, "I'm just always concentrating on my walking."  She did not have a problem walking in this area before she fell.  She identified a photograph showing the area where she tripped.  That photograph showed the elevated crack was entirely in the shadows of a tree.  She said there are *always* "bottlebrush leaves on the ground" there.

The City filed a motion for summary judgment claiming the cracked sidewalk area was "a trivial defect" and, on the day of the accident, the weather "was clear" and sunrise occurred at 5:41 a.m.  Charles Dean, the City's public works supervisor, declared that from January 1, 2009, to June 16, 2018, there were no complaints about this sidewalk defect.  The City attached Gonzalez's deposition testimony where she identified a photograph showing where she tripped. That photograph showed the elevated crack was entirely in the shadows of a tree. The City highlighted her inability to remember certain details about the incident.  It attached three photographs of the accident area.

Gonzalez contested factual statements in the City's separate statement of undisputed facts.  The parties agreed undisputed facts included that the area where she fell is "located

between two potential shadow-casters–trees on one side and a wall on the other." The City claimed as undisputed facts that a photograph admitted in the deposition "shows the condition of the sidewalk as it relates to leaves, trash and other debris on the sidewalk in essentially the same condition it was on the day of the accident." Gonzalez responded that the photograph shows the scene "similar to the way it was on the day of the accident."

In her opposition Gonzalez claimed the sidewalk defect was not trivial and there were triable issues. Citing *Weber v. John Crane, Inc.* (2006) 143 Cal.App.4th 1433, 1439, she could not remember certain details, such as the presence of shadows, which could be proven by other evidence.

Gonzalez's expert William Dexter, the former director of the California Center for Construction Education at the California Polytechnic State University–San Luis Obispo, declared the crack area in the sidewalk was not safe because it was not ramped or beveled and the City violated building code standards resulting in "safety inadequacies." Gonzalez fell "on a vertical change in the level of the sidewalk that exceeded the maximum deviation permitted" under the building code and the "City's own standards."

Gonzalez included the deposition of Joe Yahner; the City designated him as the staff person who is the most knowledgeable concerning City sidewalk repairs. Yahner testified that under City standards a sidewalk height differential of "up to a half an inch" falls within the minor defect category. The current defect did not fall within that category because of its larger size. To correct it, the City would have to build a "ramp to take off [the] edge." The City does not "have an active investigation process" for sidewalk repairs. That process is

3.

"driven by complaints" by the public. He said, "We have no warning method for the public after the complaint" is filed. The City had made repairs near this area "around the corner." The trees in the area are "City trees."

The trial court granted the City's motion.

DISCUSSION

*Summary Judgment*

"Summary judgment provides courts with 'a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute.' " (*San Jose Neurospine v. Aetna Health of California, Inc.* (2020) 45 Cal.App.5th 953, 957.) "A defendant may obtain summary judgment by showing one or more elements of plaintiff's cause of action is missing or that there is a complete defense to the cause of action." (*Ibid.*) " '[A]ny doubts as to the propriety of granting a summary judgment motion should be resolved in favor of the party opposing the motion.' " (*Id.* at p. 958.)

" ' "On appeal, the reviewing court makes ' "an independent assessment of the correctness of the trial court's ruling [regarding summary judgment], applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law . . . ." ' " ' " (*San Jose Neurospine v. Aetna Health of California, Inc.*, *supra*, 45 Cal.App.5th at p. 958.)

The party moving for summary judgment has the burden to support the motion with admissible evidence. (*Gaggero v. Yura* (2003) 108 Cal.App.4th 844, 884, 893.) If that burden is not met, the motion must be denied. (*Ibid.*) "Once this burden has been met, the burden shifts to the plaintiff to demonstrate through

4.

specific facts . . . the existence of a triable material factual issue as to the cause of action." (*Kasparian v. AvalonBay Communities, Inc.* (2007) 156 Cal.App.4th 11, 19.)

"[W]e consider the evidence presented in the light most favorable to the opposing party, liberally construing the opposing party's evidence and strictly scrutinizing the moving party's." (*Kasparian v. AvalonBay Communities, Inc.*, *supra*, 156 Cal.App.4th at p. 19.) " 'We are not bound by the trial court's stated reasons or rationales.' " (*Ibid.*) " 'Summary judgment is a drastic remedy to be used sparingly . . . .' " (*Ibid.*)

A trial court's rulings relating to photographs on a summary judgment motion are "subject to a de novo standard" of review. (*Kasparian v. AvalonBay Communities, Inc.*, *supra*, 156 Cal.App.4th at p. 24.) "It is incumbent on the reviewing court to examine the photographs for itself and make its own determinations." (*Ibid.*)

*The Trivial Defect Doctrine*

Municipalities defending personal injury lawsuits based on sidewalk defects are entitled to summary judgment as a matter of law where the defects are trivial. (*Kasparian v. AvalonBay Communities, Inc.*, *supra*, 156 Cal.App.4th at p. 27.) " '[P]ersons who maintain walkways, whether public or private, are not required to maintain them in an absolutely perfect condition.' " (*Id.* at p. 26) The duty of care "does not require the repair of minor defects." (*Id.* at p. 27.) But, "[i]f the 'court determines . . . sufficient evidence has been presented so that reasonable minds may differ as to whether the defect is dangerous, the court may not rule . . . the defect is not dangerous as a matter of law." (*Id.* at p. 28.)

*Gonzalez's Deposition Testimony–Plaintiff's Negligence*?

The City notes that during her deposition Gonzalez was asked, "Was there anything blocking your view of the rise?" Gonzalez responded, "No."

But that answer is not dispositive for a summary judgment for the City. (*Kasparian v. AvalonBay Communities, Inc.*, *supra*, 156 Cal.App.4th at p. 28.) "[T]he fact that the defect in the sidewalk was visible . . . does not compel a conclusion that the plaintiff was negligent . . . ." (*Sykes v. City of Los Angeles* (1952) 110 Cal.App.2d 57, 60.) Visibility is only one of many factors, including the pedestrian's "*right to assume* that a public sidewalk is in *reasonably safe condition*." (*Garber v. City of Los Angeles* (1964) 226 Cal.App.2d 349, 356, italics added.) Moreover, Gonzalez's counsel properly objected to this question. It did not specify whether her "view" was looking over the "rise" or as she approached it from a different angle 10 feet away. The view of the defect will be different from different distances. (*Kasparian*, at pp. 25-26.)

The more critical issue was not whether there was some object blocking her view, but whether pedestrians approaching the area would be able to detect the danger of jagged-edged concrete, that could trap their feet, imbedded in an elevated sidewalk rise. (*Kasparian v. AvalonBay Communities, Inc.*, *supra*, 156 Cal.App.4th at p. 23 [the defect was visible but the danger it posed was not "obvious"]; *id.* at pp. 28-29; *Gilbert v. City of Los Angeles* (1967) 249 Cal.App.2d 1006, 1010 [viewing an object is not the same as knowing the "magnitude" of its risk].)

In *Kasparian*, the plaintiff testified there was nothing obstructing her view of a recessed drain on a sunny day when she tripped over it. But the court reversed a summary judgment

against her.  The drain was visible, but the plaintiff did not know the danger it posed.

Here a reasonable inference is that Gonzalez was not negligent.  She was not looking in another direction or distracted. Gonzalez said, "I'm just always concentrating on my walking." As she walked, she was looking approximately five feet ahead. (*Garber v. City of Los Angeles*, *supra*, 226 Cal.App.2d at p. 358 [plaintiff was not negligent where she was "looking at the sidewalk ahead of her"].)

Moreover, "the negligence or lack of due care exhibited by a plaintiff-user of public property does not necessarily defeat his cause of action." (*Fredette v. City of Long Beach* (1986) 187 Cal.App.3d 122, 130.)  It "is a defense which may be asserted by a public entity." (*Id.* at p. 131.)  But "it has no bearing upon the determination of a 'dangerous condition' in the first instance." (*Ibid.*)

*The Sidewalk Defect–Trivial or Dangerous Condition*

Gonzalez contends that because the height differential in the sidewalk in this case exceeds one inch, it is not trivial as a matter of law.  She notes "[t]he rise at issue involved a height differential of one and three sixteenth inches."

The City cites *Huckey v. City of Temecula* (2019) 37 Cal.App.5th 1092, 1107, where the court said, "Sidewalk elevations ranging from three-quarters of an inch to one and one-half inches have generally been held trivial as a matter of law." But this general dicta does not support a summary judgment as a matter of law here.

In *Fielder v. City of Glendale* (1977) 71 Cal.App.3d 719, 726, the court said, "[W]hen the size of the depression *begins to stretch beyond one inch* the courts have been reluctant to find

7.

that the defect is not dangerous as a matter of law." (Italics added.)

Sidewalk defects with vertical elevations or height differentials within the general size of the one here have been held not to be trivial. (*Stathoulis v. City of Montebello* (2008) 164 Cal.App.4th 559, 568; *Barone v. City of San Jose* (1978) 79 Cal.App.3d 284, 291; *Johnson v. City of San Leandro* (1960) 179 Cal.App.2d 794, 800; *Sheldon v. City of Los Angeles* (1942) 55 Cal.App.2d 690, 692-693.) Defects that measure one inch or less have been held not to be trivial. (*Kasparian v. AvalonBay Communities, Inc., supra*, 156 Cal.App.4th at pp. 29-30; *Dolquist v. City of Bellflower* (1987) 196 Cal.App.3d 261, 271; *Rodriguez v. City of Los Angeles* (1963) 215 Cal.App.2d 463, 468 [sidewalk slab one-half inch to an inch above the sidewalk was "not a minor defect as a matter of law"].)

Defects measuring less than one inch may present safety hazards for elderly pedestrians. In *Kasparian*, an expert said a flooring height differential defect measuring less than one inch exceeded building code and Americans with Disabilities Act (ADA) standards. (*Kasparian v. AvalonBay Communities, Inc., supra*, 156 Cal.App.4th at pp. 29-30.) The court reversed a summary judgment against an elderly plaintiff who fell on the defect. In a fall by an elderly pedestrian, the court ruled a metal rebar height differential defect of only *one-quarter of an inch* above the flooring level was not a trivial defect as a matter of law. (*Dolquist v. City of Bellflower, supra*, 196 Cal.App.3d at p. 271.)

Consequently, "[t]he size of the defect is only one circumstance to be considered, *as no court has fixed an arbitrary measurement in inches below which a defect is trivial as a matter of law . . . .*" (*Beck v. City of Palo Alto* (1957) 150 Cal.App.2d 39,

43, italics added.) Instead, "[a]ll of the circumstances surrounding the condition must be considered in the light of the facts of the particular case." (*Ibid.*) This includes "whether there was debris, grease or water concealing the defect" or factors that make the defect "more dangerous than its size alone would suggest." (*Caloroso v. Hathaway* (2004) 122 Cal.App.4th 922, 927.) Objects that cast shadows (*Eastlick v. City of Los Angeles* (1947) 29 Cal.2d 661, 673) and "shadows from overhead trees" are relevant. (*Caloroso*, at p. 929.) Whether the sidewalk defect was merely a "height differential" caused by a gradual rise in elevation or a more dangerous jagged concrete break is relevant. (*Huckey v. City of Temecula*, *supra*, 37 Cal.App.5th at p. 1108.)

In *Barone*, the court reversed a summary judgment noting that photographs of a sidewalk defect showed an "irregular and jagged break," which precluded a finding that a one-inch sidewalk defect was trivial. (*Barone v. City of San Jose*, *supra*, 79 Cal.App.3d at p. 291.)

In *Johnson*, the court reversed a nonsuit noting that a walkway rise "between 1 1/16th and 1 3/4 inches" was not a trivial defect. (*Johnson v. City of San Leandro*, *supra*, 179 Cal.App.2d at p. 800.) Factors that made the defect dangerous included its location in the crosswalk near an area where pedestrians could be more concerned about traffic.

In *Sheldon*, the court affirmed a judgment against the city involving plaintiff's fall from a defect in a sidewalk. (*Sheldon v. City of Los Angeles*, *supra*, 55 Cal.App.2d at pp. 692-693.) The defect involved an elevation difference in the sidewalk that measured from one-third of an inch to one and one-half inches. Additional factors included a bench on the sidewalk near the defect in an area near a bus stop.

Here the photographs show a jagged-edged irregular-shaped elevated crack that extends to almost the entire width of the sidewalk. (*Barone v. City of San Jose*, *supra*, 79 Cal.App.3d at p. 291 [evidence showing an "irregular and jagged break" precluded a finding that a one-inch crack was a trivial defect].)

The City claims a deposition photograph it attached to its motion only shows what the leaves and trash looked like at the time of the accident. But the City used that photograph for additional purposes. It relied on it to support its motion and to show the dimensions of the crack. The City may not claim that it can use the photograph to support its motion, but Gonzalez may not use it to draw inferences about triable issues of fact. The City notes Gonzalez testified she was unable to recall if shadows were on the sidewalk. But the photograph she identified at her deposition shows the crack area is in the shadow of a tree. In fact, all three of the deposition photographs attached to the City's motion, taken at daytime hours, show the shadow covering the defect. The City presented evidence showing that at the time of the accident the weather was clear and sunrise occurred at 5:41 a.m. It was undisputed that the wall and the tree near the crack were potential shadow-casters. There are contested and triable issues whether the photographs are evidence showing the presence of shadows at the time of the accident. "[W]e consider the evidence presented in the light most favorable to the opposing party . . . ." (*Kasparian v. AvalonBay Communities, Inc., supra*, 156 Cal.App.4th at p. 19.)

The sidewalk leading to this area is in the light, but the area surrounding the crack is dark because of a large dark shadow from a nearby tree. A trier of fact could reasonably infer the change from a light sidewalk area to the dark area by the tree

10.

would make it harder to see the defect. (*Eastlick v. City of Los Angeles, supra,* 29 Cal.2d at p. 673 ["An added factor" supporting tort liability in a sidewalk fall case was a fence "casting a shadow over the sidewalk"]; *Caloroso v. Hathaway, supra,* 122 Cal.App.4th at p. 929 ["shadows from overhead trees"]; *United States v. Rutgard* (9th Cir. 1997) 116 F.3d 1270, 1281 [eyes take time to adjust to "different amounts of light"].) The photographs show the crack and the sidewalk around it are completely shaded because of the City's tree. A wall near the sidewalk was a "potential shadow-caster." Gonzalez testified "bottlebrush leaves" are "always" present in this area. The exhibit 2 photograph in Gonzalez's deposition shows white leaves or debris in front of the defect. (*Caloroso,* at p. 927 [debris is a relevant factor].) The City owned *both* the sidewalk and the tree.

In *Sheldon,* the court found liability against the city where a photograph of the defect showed it was not "trivial [or] minor." (*Sheldon v. City of Los Angeles, supra,* 55 Cal.App.2d at p. 693.) That defect extended almost across the width of the sidewalk. (*Id.* at pp. 691-692.) Here the crack also extends almost across the width of the sidewalk. Moreover, this defect was less visible than the one in *Sheldon* because it was in a shaded area.

In *Kasparian,* a recessed drain that created an uneven hole with heights ranging from 1/32 inch to 5/16 inch was held not to be a trivial defect as a matter of law, and a summary judgment against the plaintiff was reversed. (*Kasparian v. AvalonBay Communities, Inc., supra,* 156 Cal.App.4th 11.) Kasparian fell on a sunny afternoon in a well-lit area, without debris on the ground and nothing blocked her view. Here the uneven height disparity is much greater and there are additional aggravating factors.

The height differential here is *substantially larger* than the one in *Dolquist* where the court ruled the defect was not trivial as a matter of law. (*Dolquist v. City of Bellflower*, *supra*, 196 Cal.App.3d at p. 271.) It far exceeds the building code and ADA standards mentioned in *Kasparian*; its broken concrete distinguishes it from the one in *Huckey v. City of Temecula*, *supra*, 37 Cal.App.5th 1092; and it is larger than the sidewalk defect in *Rodriguez v. City of Los Angeles*, *supra*, 215 Cal.App.2d 463, where the court held the defect was not trivial as a matter of law.

The parties' separate statements of facts also show contested triable issues, including whether the defect violated the building code and City standards. The trial court sustained objections to Gonzalez's photographic evidence. But 1) from her personal knowledge about the scene, Gonzalez could testify whether what was shown in the photographs was accurate (*Robinson v. Cable* (1961) 55 Cal.2d 425, 429; *Jones v. City of Los Angeles* (1993) 20 Cal.App.4th 436, 440, fn. 5; *Miller v. Silvester* (1934) 140 Cal.App. 345, 347); and 2) facts Gonzalez did not remember about shadows could be shown by other evidence including photographs. (*Weber v. John Crane, Inc.*, *supra*, 143 Cal.App.4th at p. 1439.) The court found the City's fact 7 about the conditions at the time of the accident was undisputed. But that fact was contested and there is expert testimony.

Dexter, Gonzalez's expert, said the crack area was *not safe* because it was not "beveled" or "ramped." This distinguished this defect from cases where a gradual elevation caused a fall. Here there was a sharp rise or "break" that made the defect more dangerous. (*Barone v. City of San Jose*, *supra*, 79 Cal.App.3d at p. 291; see also *Huckey v. City of Temecula*, *supra*, 37 Cal.App.5th

at p. 1108 [distinguishing its case involving a "height differential" from cases involving "jagged concrete edges"].)  Gonzalez did not fall because of a mere sidewalk elevation.  She fell because her foot "got caught on the cement" crack.

Dexter said the City violated building code standards for sidewalks resulting in "*safety* inadequacies."  (Italics added.)  This shows triable issues on the defect and negligence.  (*Birkenfeld v. City of Berkeley* (1976) 17 Cal.3d 129, 143 [building code violation "may establish negligence in a tort action"]; *Kasparian v. AvalonBay Communities, Inc.*, *supra*, 156 Cal.App.4th at pp. 28-29 [court considered expert evidence on building code standards]; *Klein v. District of Columbia* (D.C. Cir. 1969) 409 F.2d 164, 166 [building code was relevant].)

Moreover, Gonzalez notes the City "did not treat the defect as a minor one."  Yahner said under the City's standards there are different types of sidewalk repairs.  For the *minor* defect, which the City classifies as "*up to a half an inch*," the City uses a grinding process to wear down the sharp edges.  (Italics added.)  But for defects, such as the current one, *not in the minor category*, the City must build a "ramp to take off [the] edge."

A trier of fact may consider how the City classifies sidewalk defects in determining whether a defect is trivial.  (*Curreri v. City & County of San Francisco* (1968) 262 Cal.App.2d 603, 609-610 [a city's own standards or procedures on sidewalks is "one factor to be considered" in deciding whether there are triable issues of fact].)  This could also potentially be used as an admission (*Fahlgren v. Department of Motor Vehicles* (1986) 186 Cal.App.3d 930, 935) to challenge the City's claim that the defect is trivial.

The City claimed it did not have notice of this defect and there were no prior accidents.  But " 'the fortuitous absence of

prior injury does not justify relieving defendant from responsibility for the foreseeable consequences of its acts.' " (*Isaacs v. Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 126.)

Gonzalez claims the City had constructive notice. This "may be established by showing long-continued neglect of conditions that should have been known or seen." (*Garber v. City of Los Angeles*, *supra*, 226 Cal.App.2d at p. 353.) "[T]he City is presumed to have notice of the existence of defects which are conspicuous . . . ." (*Laurenzi v. Vranizan* (1945) 25 Cal.2d 806, 812.) This defect could not remain unnoticed had there been inspections, as it extends almost entirely across the width of the sidewalk. Both the sidewalk and the tree that shaded the area were City property. Sidewalks cracking from the growth of tree roots is not unusual. (See, e.g., *Alpert v. Villa Romano Homeowners Assn.* (2000) 81 Cal.App.4th 1320, 1326.)

A trier of fact could reasonably infer the City's inspection process for discovery of sidewalk defects was inadequate and potentially dangerous. Yahner said the City does not have "an active investigation process" for sidewalk repairs. Instead, the process is solely "driven by complaints," and the City has "*no warning method for the public* after the complaint" is filed. (*Kirack v. City of Eureka* (1945) 69 Cal.App.2d 134, 138 [duty of cities to "exercise due care" to discover patent or latent defects], italics added; see also *Gallipo v. City of Long Beach* (1956) 146 Cal.App.2d 520, 528 ["It is the duty of a municipality to keep its streets and sidewalks in a reasonably safe condition"].) His testimony could support reasonable inferences that the City "failed to exercise due care to inspect [the] sidewalk." (*Kirack*, at p. 138), and this presented a potential public safety issue.

The City claimed its lack of inspections was due to lack of resources. But whether that is a reasonable excuse involves factors not presented in the City's motion, including the practicality of repairs, cost, and the City's staff and resources, weighed against the factor of the potential for harm to the public. (*Ducey v. Argo Sales Co.* (1979) 25 Cal.3d 707, 720, fn. 6.) This involves a " 'fact intensive inquiry that will rarely be decided on summary judgment' " (*Wilson v. Pier 1 Imports (US) Inc.* (E.D. Cal. 2006) 439 F.Supp.2d 1054, 1067.)

DISPOSITION

The judgment and order granting summary judgment are reversed. Costs on appeal are awarded in favor of appellant.

<u>NOT TO BE PUBLISHED.</u>

GILBERT, P. J.

We concur:

YEGAN, J.

TANGEMAN, J.

Kevin G. DeNoce, Judge
Superior Court County of Ventura

_____

Law Office of Ball and Yorke, Esther R. Sorkin for Plaintiff and Appellant.

Gregory G. Diaz, City Attorney, Andy H. Viets and Dirk DeGenna, Assistant City Attorneys, for Defendant and Respondent.